**In re COHEN (two cases).**
Nos. 239, 250.

Circuit Court of Appeals, Second Circuit.
Dec. 19, 1932.

Arthur J. W. Hilly, Corp. Counsel, of New York City (William E. C. Mayer and J. Joseph Lilly, both of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (J. Edward Lumbard, Jr., Edmund L. Palmieri, William W. Prager, and Seymour M. Klein, Asst. U. S. Atty., all of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The contention of the appellant is that, by reason of the provisions of the Election Law of the state of New York, the records of the board of elections and the voting machines are so wholly within the control of the state that they cannot be directly reached by a subpœna duces tecum issued out of the United States court in a grand jury investigation. This position is based on the provisions of article 1, § 4, of the United States Constitution, that: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the places of choosing Senators."

It is argued that, because of the foregoing article of the Constitution, the New York Election Law governs the production of election records even in proceedings in the courts of the United States based upon the alleged violation of federal statutes enacted to prevent frauds in the election of United States Senators and Representatives.

Appellant says that the soundness of his contention is shown by the provisions of sections 123, 264, 330, 331, 332, and 333 of the New York Election Law (Consol. Laws, c. 17). Section 123 provides that ballots shall be preserved inviolate for a certain time after the election, but that the ballot boxes and packages may be "examined, upon the order of any court or justice of competent jurisdiction." Section 264 provides that a voting machine shall remain locked against voting for a certain time after election "except that it may be opened and all the data and figures therein examined upon the order of any court or judge of competent jurisdiction. * * *"

Sections 330, 331, 332, and 333 provide that the Supreme Court of the state shall have summary jurisdiction over registration, voting, and enrollment, and, at the instance of an aggrieved candidate or voter, over the canvass of votes, and that it may direct the examination of any ballot or voting machine.

It is to be noticed that none of the foregoing sections do more than give the Supreme Court of New York a supervisory power over elections and furnish one mode of access to ballot boxes and voting machines. They in no way and by no suggestion, express or implied, render such records immune from subpœna by a state or United States court in an appropriate proceeding. They have frequently been produced before state grand juries under a subpœna duces tecum. In People v. Harrison, 190 App. Div. 902, 179 N. Y. S. 941, ballots were thus produced, as appears from the printed record on appeal.

The New York Election Law, at section 124, requires the preservation of registers containing the signatures of voters made on the day of registration or of general election and also the preservation of statements of results as part of the records of the board of elections. It also requires that these records shall be preserved "for at least one year after the receipt thereof and until the determination of any action or proceeding touching the same. * * * " These records are relevant to any investigation by a federal grand jury as to whether citizens have been deprived of the right to vote, or as to whether their votes have not been counted. Such records are the very strongest evidence of who voted and how many votes were counted. Voting machines containing the results of the vote are plainly relevant in an investigation of violations of the federal election laws.

There is nothing in the New York Election Law that requires a special order of the New York Supreme Court, or any court, for the production of registers containing the signatures of voters or of statements of the results of the votes cast in election districts.

It cannot fairly be said that the method whereby records, ballots, or voting machines are to be produced in court has any relation to the "Times, Places and Manner of holding Elections" within the meaning of article 1, § 4, of the Constitution, and it cannot be supposed that the state of New York would attempt to limit the effect of the writ of subpœna which the United States courts ordinarily issue in investigating violations of federal statutes.

Moreover, so far as the statutes of the United States forbid interference with the right of suffrage and prohibit corrupt practices in connection with elections of United States Senators and Representatives, they are paramount and supersede any state legislation that is conflicting. Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717. In a situation closely analogous to the present, the United States District Court in Arkansas held that election returns had to be produced by state officials in response to a subpœna duces tecum issued out of the federal court when required for use by a federal grand jury engaged in investigating the commission of offenses against laws of the United States relating to elections. In re Massey (D. C.) 45 F. 629, 633. In that case the statutes of Arkansas (Mansf. Dig. § 2694) provided that, after an election, the ballots should be lodged with the county clerk and should "in no event be opened except in case of a contested election." This provision was held to afford no excuse to a county clerk for withholding votes from production before the grand jury when they were called for by a subpœna duces tecum.

Appellant argues that Smiley v. Holm, 285 U. S. 355, 52 S. Ct. 397, 76 L. Ed. 795, justifies his contention that the records and voting machines can only be produced under an order of the state court or at least of some court of competent jurisdiction, and not under a mere subpœna duces tecum. He bases this contention upon the statement in the opinion of Hughes, C. J. (at page 366 of 285 U. S., 52 S. Ct. 397, 399) that article 1, § 4, of the Constitution, authorizes the states to "provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved." But this language is not thought to limit the paramount right of Congress to enact statutes to prevent corrupt practices in the elections of Senators and Representatives or to affect the procedure before grand juries engaged in investigating alleged violations of such congressional enactments. One of the very statutes of the United States involved in the present grand jury investigation (section 51, title 18, U. S. C. [18 USCA § 51]) was before the Supreme Court in United States v. Mosley,

238 U. S. 383, 35 S. Ct. 904, 59 L. Ed. 1355, and was held valid.

In our opinion the appellant has shown no excuse for failing to produce the records and voting machines before the grand jury.

The orders are accordingly affirmed.