238 F.2d 825
 UNITED STATES of America, Appellant,
v.
Zeno PONDER, E. Y. Ponder, B. K. Meadows, Arthur E.
Cantrell, LeRoy Shelton, W. T. Moore, Roy Freeman,
Merit Whitt, Jeff Whitt, and James
William Baldwin, Appellees.
 No. 7251.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 1, 1956.
Decided Nov. 29, 1956.
 
 1
 J. M. Baley, Jr., U.S. Atty., Marshall, N.C., for appellant.
 
 
 2
 Thomas A. Uzzell, Jr., Asheville, N.C. (A. E. Leake, Marshall, N.C., and W. R. Francis, Waynesville, N.C., on brief), for appellees.
 
 
 3
 Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District judge.
 
 
 4
 BRYAN, District Judge.
 
 
 5
 The United States seeks review of an order of the District Court, entered in a pending prosecution of the appellees for election frauds, suppressing as evidence the election ballots, books, and returns. These had been obtained from some of the defendants, and were held, by the Marshal under an impounding order of the court made before the criminal action was begun. The order of suppression was granted on defendants' motion after indictment. Trial has since been stayed. The points being appropriately presented, we conclude that the order is appealable and that the trial court erred in suppressing the evidence.
 
 
 6
 After the 1954 general elections for the selection of members of Congress and certain State officers, complaints of irregularities therein, occurring in Madison County, North Carolina, prompted an investigation by the Department of Justice. In this undertaking the United States Attorney submitted a petition, supported by his affidavit, to the District Judge asking for an order impounding the ballots, registration books, returns, and other election records of the County. The affidavit referred to the pendency of the investigation, explained the need for examination of the election materials, and expressed the necessity for immediate safeguards against their loss or destruction.
 
 
 7
 Forthwith the District Judge ordered the United States Marshal to take possession of the electoral records, then in the hands of the State election officials. Pursuant to this order, entered December 29, 1954, the Marshal on the next day served it, with a copy of the petition and affidavit, upon the Chairman of the County Board of Elections and upon the Clerk of the court of the county. The Clerk at once delivered to the Marshal the abstracts of returns filed in his office; the Chairman likewise surrendered such books and voting records as he had, some he kept in the county courthouse and some at home. Thereafter the Marshal called at each voting precinct and received from the election officer there the records he was keeping. Complete inventory was filed by the Marshal with his return.
 
 
 8
 On November 17, 1955, a grand jury in the District Court indicted the appellees for conspiring to injure and oppress the citizens of Madison County in their right of suffrage, 18 U.S.C.A. § 241, the grand jury having considered the matter since September 8, 1955 and referred to the impounded papers or a part of them. Named in the true bill as defendants were the Chairman of the County Board of Elections, two precinct registrars, and seven others who were unofficial election workers or notaries public. Nothing had been taken from the seven. Entitling their motion in the criminal proceeding initiated by the indictment, all the defendants moved the District Court for the return to them, and the suppression as evidence in the prosecution, of the election materials taken by the Marshal.
 
 
 9
 The District Judge granted the motions. He considered the impounding order to be the equivalent of a search warrant; he held that the legal prerequisites to the issuance of such a warrant, as stipulated in Rule 41, Federal Rules of Criminal Procedure, 18 U.S.C.A., had not been followed in many particulars, but chiefly in the affidavit of probable cause. In his opinion the seizure violated the Fourth Amendment and the election materials were thereby rendered inadmissible as evidence. On this appeal the defendants have interposed a motion to dismiss, contending that the order of suppression is but a mesne order in the criminal action, without appealable finality.
 
 
 10
 I. We are of the opinion that the seizure, impounding, return, and suppression of the election records constituted a proceeding independent of the criminal case. The suppression order dissolved the pound, terminated the separate proceeding, and plainly, therefore, was a final decision, reviewable by virtue of section 1291, title 28, United States Code.
 
 
 11
 The power to impound is inherent in a court as an institution of law enforcement; it may be exercised originally, as well as auxiliary to pending or actions. United States v. McHie, D.C.Ill.1912, 196 F. 586; In re Howell, D.C.Pa.1902, 119 F. 465. A court is not so impotent that it cannot instantly seize, in the face of threat of destruction or spoilation, evidence of crime without awaiting inquest or accusation. Precedent for the power is found in repeated and unquestioned resort to it. Of course, an order of this kind would issue only on good cause shown, but the need for restraint does not deny the power.
 
 
 12
 In some instances a search warrant might be required to effectuate the impounding; if so, the warrant must fulfill the requisites of Rule 41. But we do not understand that the warrant cannot issue in the absence of a contemporaneous prosecution. Indeed, the Rule is geared to an ante litem seizure. 41(b)(2). However, the present impounding order was not a search warrant; for it ordered no search. It was an order well within the province and proprieties of a District Court. The impoundage was a sovereign's act to safeguard public records; had it been executed at the behest of the State, its validity would be readily manifest; that it was effected by another sovereign, having an equal public interest, lessens its validity not a tittle.
 
 
 13
 Indicating its individuality, the imponding petition and order were entitled 'In the Matter of Investigation of Alleged Election Irregularities in Madison County, North Carolina'. From December, 1954 until the following September, when the grand jury inquiry was commenced, there was no other proceeding touching the election papers. The indictment was reported in November, 1955, but even afterwards, March 28, 1956, certain of the impounded documents were returned by an order rendered in the impounding proceeding rather than in the criminal case. The incidence upon the criminal prosecution of the final order in the separate proceeding did not destroy the independence of the later. Cogen v. U.S., 1929, 278 U.S. 221, 225, 49 S.Ct. 118, 120, 73 L.Ed. 275.
 
 
 14
 In the case just cited, Justice Brandeis reviews the tests for determining whether an application for the return of seized papers and objects is an independent proceeding. He notes that when it is made by a separate, plenary suit, the independence is obvious. However, he emphasizes, the same independence may exist in a proceeding by motion, which is the necessary from when the materials, as here, are in the possession of the court. 'Where an application is filed in that form', continues the Justice, 'its essential character and the circumstances under which it is made will determine whether it is an independent proceeding or merely a step in the trial of the criminal case'.
 
 
 15
 Following this prescript, we accent the public character of the materials now in question. They were papers of the State of North Carolina, papers to which every citizen of that State would be entitled to reasonable access, regardless of the outcome of the criminal action. Thus, North Carolina would have had locus standi before the court to inquire of the future use or disposition of the records. Actually, in the intermediate order already mentioned as allowed in the impounding proceeding, the return of the papers was to a State or county election official on his request. This experience, and the possibility of similar applications, relates our case to the illustration of independence offered by Justice Brandeis: 'The independent character of the summary proceedings is clear, even where the motion is filed in a criminal case, whenever the application for the papers or other property is made by a stranger to the litigation * * *'.
 
 
 16
 Likewise, the fact that the public character of these materials caused their seizure to affect many persons other than the parties to the criminal case is itself proof of the independence of the proceeding. The impoundment was a temporary 'outlawry' of the election materials, a result over and beyond the effect of their use in the criminal action. United States v. Wallace, 1949, 336 U.S. 793, 802, 69 S.Ct. 824, 93 L.Ed. 1042.
 
 
 17
 Additionally, the very terms of the pinfolding order reveal its separateness from the subsequent prosecution. It did not direct delivery of the materials to the United States or to its prosecuting officers. The Marshal was commanded to 'impound and take into custody' the election paraphernalia, making them 'available to agents of the Federal Bureau of Investigation', but 'taking care at all times to preserve and protect these materials from any alteration, change or destruction.' His return reported that the 'material was impounded and stored in the Office of the United States Marshall, Asheville, N.C.' Doubtlessly the court would have allowed others to inspect the property. But the point is this: at the time of its inception the court deemed the impounding proceeding merely a preservative legal wrapping of the records, and not a partisan measure.
 
 
 18
 In United States v. Williams, 1955, 227 F.2d 149, we held the order for the return of seized property not to be final but to be a part of the criminal action. There the circumstances, vastly different from those here, conclusively negated the independence of the seizure and the criminal case. The seizure had not preceded the prosecution by many months; the property seized was exclusively of a private character; and the capture affected no one other than its owners or possessors. Further, the evidence-- illicit whiskey--was itself contraband, its being a crime, and itself provocative of the arrest originating the prosecution. Thus, the seizure was of one with the criminal action. Also, there the taking and retention were the acts of the defendant's immediate opponent, not the act of a disinterested conservator. On its facts the Williams decision was required by the Cogen opinion, supra. Cf. United States v. Rosenwasser, 9 Cir., 1944, 145 F.2d 1015, 156 A.L.R. 1200.
 
 
 19
 Other circuits have sustained the allowance of an appeal to the Government from an order suppressing the evidence. United States v. Cefaratti, 1952, 91 U.S.App.D.C. 297, 202 F.2d 13; United States v. Stephenson, 1955, 96 U.S.App.D.C. 44, 223 F.2d 336; United States v. Carroll, 1956, 98 U.S.App.D.C. 244, 234 F.2d 679; United States v. Bianco, 3 Cir., 1951, 189 F.2d 716, 717, note 2. Some of the cases rely upon the absence of an indictment or information at the time of the motion. However, as we said in the Williams case, we do not believe that the relative 'time of the finding of the indictment is the sole criterion'.
 
 
 20
 II. The present order is also endued with appealability by the statute awarding to the Government a review in the Court of Appeals 'From a decision or judgment (of a district court) setting aside or dismissing any indictment * * * except where a direct appeal to the Supreme Court' is permitted, an exception not pertinent here. 18 U.S.C.A. § 3731. Admittedly, the upshot of the District Court's suppressive order was to immobilize further prosecution of the indictment, for the election records were the foundation of the Government's case. Had dismissal of the indictment accompanied the nullification of its sustenance, the defendants not being in jeopardy, the reviewability of the order under 3731 would be more evident. This result could still be accomplished. If we had found the order non-reviewable at this stage, and remanded, the Government could thereupon announce its inability to prosecute, let the indictment be dismissed for lack of prosecution, and appeal the dismissal. We see no reason to insist upon these formalities before allowing the appeal under 3731. This is especially true because, clearly, the District Judge had in mind the dismissal of the indictment when he signed the instant order. His statements from the bench reveal that he thought the indictment should fall with the annulment of the evidence. The apparently contrary decision in United States v. Janitz, 3 Cir., 1947, 161 F.2d 19, is distinguished by the vital circumstance that the accused had there been put in jeopardy at the time of the dismissal.
 
 
 21
 That the challenged order is open to reexamination both under 1291, title 28, and under 3731, title 18 is a proposition abounding with reason and common sense. A different decision would forever and irremediably condemn the prosecution's case before trial. It would plainly be contrary to the spirit of section 3731. Rule 41(e) implements our view by its demand that, where practicable, a motion to suppress must be presented before trial.
 
 
 22
 III. Passing to the merits of the appeal, we think that in upholding the defendant's motion for suppression of the election materials the District Court was in error, even if the impounding order be treated, and found fatally defective, as a search warrant. The reason is that no search was made, as the return of the Marshal shows, and there is no other proof to the point. Again, the custodians voluntarily produced the materials. There has simply been no infringement of the defendants' right of security. Turner v. U.S., 4 Cir., 1955, 222 F.2d 926, 929, certiorari denied 350 U.S. 831, 76 S.Ct. 65; Zap v. U.S., 1946, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477.
 
 
 23
 Furthermore, the motion was submitted under Rule 41(e), but none of the defendants was a person 'aggrieved' within the Rule. None had a proprietary interest in the property seized; none in his own right had a possessory claim, certainly not superior to his sovereign's. In these circumstances the Fourth Amendment does not intervene to bar acceptance of the evidence. Wilson v. U.S., 1955, 10 Cir., 218 F.2d 754, 756; Kitt v. U.S., 4 Cir., 1942, 132 F.2d 920, 921. More, when the motion was heard, the defendant who had been the chairman of the elections board, and from whom the bulk of the materials had been procured, was no longer in office, and so, obviously, he was in no position to reclaim the records. Of course, the seven defendants from whom nothing was taken have no grievance.
 
 
 24
 In fine, unless the suppression order is vacated, papers in every respect legitimate and lawful-- public records now by law open to every citizen-- must be refused the Federal Government, even on subpoena. This situation is indefensible, either in logic or law. The District Judge's determination of the motion, though painstaking and patient, was erroneous.
 
 
 25
 Reversed.