In re George C. WALLACE, W. A. Stokes, Sr., Grady Rogers, E. P. Livingston, M. T. Evans, and J. W. Spencer.

No. 1487-N.

United States District Court
M. D. Alabama, N. D.
Jan. 9, 1959.

John Patterson, Atty. Gen., of Alabama, E. L. Rinehart, Montgomery, Ala., (Ralph Smith, Jr., Montgomery, Ala., of counsel), for all respondents.

Chauncey Sparks, Archie Grubb, Preston C. Clayton and Seymore Trammell, Eufaula, Ala., for respondent George C. Wallace, Judge of the Third Judicial Circuit of Alabama.

Joseph F. Johnston, Birmingham, Ala., for Alabama State Bar, as amicus curiae.

Joseph M. F. Ryan, Jr., D. Robert Owen, Attys., Dept. of Justice, Washington, D. C., W. Wilson White, Asst. Atty. Gen., for the United States.

JOHNSON, District Judge.

This is the matter of civil action 1487-N, styled In re: George C. Wallace, W. A. Stokes, Sr., Grady Rogers, E. P. Livingston, M. T. Evans, and J. W. Spencer. This is an oral opinion and order in this matter upon the motion filed this date for further relief, filed upon behalf of the Attorney General of the United States by his attorneys and for the purposes of further specific relief in this cause, in accordance with paragraph four of the order entered herein January 5, 1959. The order made and entered in this cause by this Court on January 5, 1959, was presented to this Court by counsel for the United States, amicus curiae counsel appearing with the permission of this Court and at the request of the Alabama Bar Association, and counsel for George C. Wallace, W. A. Stokes, Sr., Grady Rogers, E. P. Livingston, M. T. Evans, and J. W. Spencer; several attorneys appearing and representing at that time George C. Wallace, including John Patterson, Chauncey Sparks, Preston C. Clayton, Seymore Trammell, and Archie Grubb. At the time said order was presented to this Court by all of said counsel, this Court, prior to accepting, signing, and filing said agreed-upon order, in response to inquiry by counsel for George C. Wallace, stated to said counsel, who were at that time appearing for and on behalf of George C. Wallace, that "the words 'relevant to the Commission's inquiry'" meant the registration and voting records in the custody of the said George C. Wallace. This statement concerning relevancy of said records was accepted by George C. Wallace by and through his counsel, whom he elected to appear

through without objection, and this Court was assured by all concerned that said agreement would be carried out fully and in good faith. Said agreed-upon order was executed and filed by this Court upon that basis. It now appears that the said George C. Wallace has not and still refuses to carry out the said agreement entered into with this Court by the counsel that he elected to appear before this Court through, even in the face of—and as this Court is advised—the advice by his counsel.

Now, upon consideration of said motions, including the motion now made by the Attorney General of the United States for further relief, and upon consideration of the statements made by counsel to the Court in chambers, upon consideration of the written briefs filed in support of said motions and in opposition thereto, this Court specifically finds that the Commission on Civil Rights is a temporary agency of the United States Government created by the Civil Rights Act of 1957, under Public Law 85–315, dated September 9, 1957, 42 U.S.C.A. § 1975 et seq.; that under Section 104(a) of that Act the Commission is empowered and directed to:

"(1) investigate allegations in writing under oath or affirmation that certain citizens of the United States are being deprived of their right to vote and have that vote counted by reason of their color, race, religion, or national origin; which writing, under oath or affirmation, shall set forth the facts upon which such belief or beliefs are based;

"(2) study and collect information concerning legal developments constituting a denial of equal protection of the laws under the Constitution; and

"(3) appraise the laws and policies of the Federal Government with respect to equal protection of the laws under the Constitution."

The Act also empowers the Commission, or any authorized subcommittee thereof, to hold such public hearings and act at such times and places as the Commission may deem advisable. Said Act also empowers the Commission to require the attendance and testimony of witnesses or the production of written or other matters. That part of the Act that empowers the Commission, insofar as that is concerned, is Section 105(f).

In case of contumacy or refusal to obey a subpoena issued and caused to be served by the Commission, the Act confers jurisdiction upon "any district court of the United States * * * within the jurisdiction of which the inquiry is carried on * * * upon application by the Attorney General of the United States * * * to issue to such person an order requiring such person to appear before the Commission or a subcommittee thereof, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation; and any failure to obey such order of the court may be punished by said court as a contempt thereof." Reference is made to Section 105(g) of the Act.

The Commission's announcement made on October 23, 1958, set a public hearing to be held in Montgomery on December 8, 1958. It was further announced that said hearing would be to investigate complaints by certain citizens of the United States concerning deprivations of the right to vote by reason of race or color. It was on said date further announced that the voting and registration records of several counties of the State of Alabama would be sought. On October 21, 1958, two investigators for this Commission sought permission to inspect certain voting and registration records of Macon County, Alabama, and insofar as any comment this Court makes concerning the records of Macon County, Alabama, a provision made in the latter part of this order with reference to the voting and registration records in that County will reflect that the registrars of Macon County, Alabama, that is, Registrars Livingston and Rogers, and those records, are no longer in this case. This request was refused by the registrars who were then custodians of those rec-

ords. It was publicly announced that the refusal was upon the advice of the Attorney General for the State of Alabama.

Prior to this hearing, by subpoenas served December 2, 3, and 4, 1958, the movants, as officials of the State of Alabama (and the movants' official positions are: W. A. Stokes, Sr., and J. W. Spencer, members of the Board of Registrars of Barbour County, Alabama; M. T. Evans, member of the Board of Registrars of Bullock County, Alabama; E. P. Livingston and Grady Rogers were members of the Board of Registrars of Macon County, Alabama; and George C. Wallace is Judge of Third Judicial Circuit of Alabama, comprising Barbour, Bullock, and Dale Counties) were ordered to appear on December 8, 1958, before the Commission at Montgomery and to produce certain voting and registration records and give testimony concerning the matters then under investigation. Five appeared before the Commission and refused to give testimony and failed to produce records. Movant Wallace failed to appear. This Court did, therefore, upon written verified application, with proper affidavits and documents attached thereto, issue its order of December 11, 1958 —an ex parte order.

The movants, with the exception of Livingston and Rogers who will be dismissed, by the motions now presented and under consideration by this Court contend:

(1) That enforcement of the subpoenas would constitute an illegal invasion of the sovereignty of the State of Alabama.

(2) That enforcement would violate the principle of comity.

(3) That enforcement would constitute an improper inquiry into judicial acts of judicial officers.

(4) That this Court is without jurisdiction to enforce compliance with said subpoenas.

(5) That Alabama law forbids removal of records sought from counties in which they are located, and also the records are too bulky and voluminous to produce, and also the records are privileged and confidential.

(6) That the movant-registrars no longer have custody of these records.

A somewhat detailed though combined discussion of these several points is considered necessary and appropriate.

The authority delegated to the Federal Government by the Fifteenth Amendment to the Constitution of the United States is undoubtedly the authority under which the Congress of the United States was acting when the Civil Rights Act of 1957 was passed. The provision in the Act providing for investigation of alleged discriminatory practices, including inspection of voting and other pertinent records, must be considered to be an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin. That part of the Act is, therefore, by this Court considered "appropriate legislation" within the meaning of Section 2 of the Fifteenth Amendment.

The sovereignty of the State of Alabama, or of any other of the states, must yield, therefore, to this expression of the Congress of the United States, since this expression of Congress—by this Act—was passed in a proper exercise of a power specifically delegated to the Federal Government, and the Court cites Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717. This is necessarily true even though the states possess concurrent legislative jurisdiction with respect to voting, since the Federal Government, and its law, is supreme in this area. The Court cites Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449.

The concept of the sovereignty of the states is embodied in the Tenth Amendment to the Constitution of the United States, this amendment providing that those powers are reserved to the states which have not been "delegated to the United States by the Constitution, nor prohibited by it to the States."

Here we have involved the very powers which the Constitution of the United States says are not reserved to the states. See United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609; and Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116.

The fact that the State of Alabama voting and registration records are involved in this case does not alter the legal principle at all. In re Cohen, 2 Cir., 62 F.2d 249; United States v. Ponder, 4 Cir., 238 F.2d 825; Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424.

■ Thus, it must be generally concluded, and this Court now concludes, that since the Congress of the United States did have the authority to pass the Civil Rights Act of 1957 and that said authority is supreme in this field as opposed to any authority of the states, and since the Commission on Civil Rights was in issuing the subpoenas in question acting pursuant to that Act, and since this Court was in issuing its order upon the application of the Attorney General of the United States also acting pursuant to said Act, the contention that movants make that enforcement of the subpoenas will constitute an illegal invasion of the sovereignty of the State of Alabama and the contention that this Court is without jurisdiction to enforce compliance with said subpoenas are without merit and cannot stand.

The question movants raise concerning improper inquiry into judicial acts of the judicial officers must for this particular case be discussed separately as to the movant Wallace, who is a Circuit Judge of the State of Alabama, and the other movants, who are registrars of the counties involved.

■■ As to Judge Wallace, no appearance and no testimony from him is, by this Court, required, since he, as this Court understands the matter, is only called upon to respond to a subpoena duces tecum. Any other understanding or any other construction that may be placed upon the Commission's subpoena is, by this Court, cancelled. Such a subpoena, a subpoena duces tecum, requires no testimony, only production of records. Such production can be made, if he sees fit, by clerks or agents. Thus the questions raised by him concerning his schedule and absence from his circuit need no discussion.

■ Concerning the requirement of Wallace to produce these records, it is sufficient to say, and this Court now says, that there is no concept of judicial privilege or immunity which relieves him of this requirement. Legislation enacted pursuant to the Federal Constitution is binding on all state officials, including the judges. This question was laid to rest by the Supreme Court of the United States in Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676, where the court stated:

"[it has] reference to actions of the political body denominated a State, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws."

That same principle of law is applicable here in this case where the Fifteenth Amendment to the Constitution of the United States is involved.

■ Other cases have been equally precise in laying down this principle that state action, in whatever form, will not be permitted to prevent the proper exercise of a proper federal power, and this Court cites United States v. Peters, 5 Cranch 115, 9 U.S. 115, 3 L.Ed. 53; Faubus v. United States, 8 Cir., 254 F.2d 797; and Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

■ Thus this Court now concludes that judicial status does not confer a

privilege upon Judge Wallace to disregard the positive command of the law—here the Fifteenth Amendment—and that such status does not give immunity from inquiry which is duly authorized, as this inquiry is. This does not mean to say or imply that a judge is not immune from investigation or inquiry into his judicial acts; he is. For example, this Commission, nor indeed the Congress of the United States, could not inquire of Judge Wallace as to why he impounded these records or what factors he took into consideration when he impound these records. However, in the case now presented no judicial act or decision of Judge Wallace need be nor is questioned. It may be, and this Court will for the time being—and I emphasize "for the time being,"—assume that the order impounding the records of Bullock and Barbour Counties were proper and in good faith. The only question presented is the right of the Commission on Civil Rights to see those records.

█ █ Now, generally, when a direct conflict occurs between state and federal action in a field such as this field, the states must yield. For the law to be otherwise would render the supremacy clause in the Constitution of the United States ineffective, and when I say supremacy clause, I am referring to Article VI, clause 2. This principle was laid down early in our law by the Supreme Court of the United States in that now much referred to and well-known Tarble's Case, 13 Wall. 397, 80 U.S. 397, 20 L.Ed. 597. However, that is the general rule, and a different problem exists where the *res*, that is, the thing, is in the possession of the state court. The Supreme Court of the United States, in Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 358, 28 L.Ed. 390, made this clear when it stated:

"[B]ut between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. * * They exercise jurisdiction, it is true,

within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void."

To the same effect is the Ninth Circuit case of Strand v. Schmittroth, 251 F.2d 590. This Court notes at this time that the Heyman principle does not apply when the state court has acted in seizing the *res* in bad faith. It should be made clear, therefore, that if Judge Wallace impounded these records for the sole purpose of thwarting this investigation, he cannot take refuge in the Heyman principle of comity. In this case, it is not necessary for the good faith of Judge Wallace, insofar as his impounding these records is concerned, to be inquired into, since this Court considers it appropriate to modify the subpoena of the Commission (which modification has already been done by agreed order and that phase of the agreed order still stands) and to modify the order of this Court dated December 11, 1958 and amended December 17, 1958. This modification will eliminate any proposed seizure and removal of these voting records and will eliminate any possible interference in their bona fide use by the State authorities. This power to make such modification, if this Court considers it appropriate, even in the absence of agreement, is clear. The Court cites N. L. R. B. v. Duval Jewelry Company, 5 Cir., 1958, 257 F.2d 672, and reference is made to cases cited by the Fifth Circuit Court of Appeals in that case. This modification will relieve movants, particularly George C. Wallace, of any obligation to produce the records in Montgomery, and will eliminate the necessity for the records to be moved from their present location. Instead, each of the registrars, specifically, W. A. Stokes, Sr., M. T. Evans, and J. W. Spencer, and George C. Wallace, as Judge and in whatever other capacity he

is acting in, will be ordered to make said records available at their present location, which this Court understands is at the Court House in Barbour County and if that is not the case then wherever their location is, for copying, inspection, and photographing by the Commission or its duly authorized agents. Thus the movants' objection to the removal of the records from their present location, and their voluminous aspect, is eliminated from this case.

Now, it is obvious from what has been stated by this Court already in this order that there is no valid basis for the movant-registrars' objections to appearing and testifying if this Court by later order decides, upon a proper application, if such application is made, that they must do so. Any objections that they now make will, therefore, be and they are hereby overruled and denied. The question as to the time and place the registrars W. A. Stokes, Sr., M. T. Evans, and J. W. Spencer will be ordered to appear and testify will be reserved for further order, pending the examination of these records in Barbour and Bullock Counties by the Commission or its duly authorized agents.

The contention that the registrars are judicial officers has no merit in this action. This Court cites Malone v. Jones, 219 Ala. 236, 122 So. 26; Boswell v. Bethea, 242 Ala. 292, 5 So.2d 816; and Hawkins v. Vines, 249 Ala. 165, 30 So.2d 451. In the Bethea case, particularly, the Supreme Court of Alabama set forth the proposition that the functions of the registrars are identical with the functions of an administrative agency making quasi-judicial determinations.

In any event, regardless of their status under Alabama law, registrars cannot be given any immunity from the exercise of a federal function such as that involved in this case. To hold otherwise would be to say that the State of Alabama could thwart the Congress of the United States in any field and deprive the Federal Government of its specifically delegated powers, here those delegated specifically by the Fifteenth Amendment to the Constitution, simply by saying that the state officers, such as the registrars, were judicial officers or judges. That cannot be and it is not the law as this Court understands it. This Court now orders and directs that George C. Wallace, as the present custodian of the said records, that is, the voting and registration records of Barbour and Bullock Counties, Alabama, is hereby ordered and directed to make available to the Commission on Civil Rights or its authorized representatives or agents between the hours of 10:00 a.m. and 4:00 p.m., on January 12 and 13, 1959, at some convenient place to all concerned, in the Court House at Barbour and/or Bullock Counties, Alabama, the records of the Boards of Registrars of Barbour and Bullock Counties, Alabama, pertaining to the registration of all persons heretofore registered as voters, including applications, questionnaires, and other evidence touching upon the qualifications of such persons registered and not registered by the Boards of Registrars of Barbour and Bullock Counties, Alabama. As to Grady Rogers and E. P. Livingston, it appears that these individuals, acting individually and through their counsel, have in good faith carried out their agreement and complied with the order of this Court dated January 5, 1959, and this matter is, therefore, as to them, ordered to be and it is hereby dismissed. Jurisdiction of this cause is retained for the purpose of any further orders that it may be necessary and appropriate to enter. The representatives of the Commission on Civil Rights, the representatives of the Attorney General of the United States, and the counsel for Wallace, Stokes, Evans, and Spencer are directed to appear before this Court at 9:30 a.m., on January 14, 1959, for the purpose of reporting to this Court the progress of the matter, and also for the purpose of presenting any further motions that may be appropriate or required.