**UNITED STATES of America, Plaintiff,**

v.

**STATE OF ALABAMA; The Board of Registrars of Macon County, Alabama; Grady Rogers, E. P. Livingston, Registrars, Defendants.**

No. 479–E.

United States District Court
M. D. Alabama, E. D.

March 6, 1959.

W. Wilson White, Asst. Atty. Gen., Joseph M. F. Ryan, Jr., Attorney, Department of Justice, Washington, D. C., and Hartwell Davis, U. S. Atty., Montgomery, Ala., for the United States.

MacDonald Gallion, Atty. Gen., and N. S. Hare, Special Asst. Atty. Gen., State of Alabama, for all defendants.

Lawrence K. Andrews, Union Springs, Ala., for defendants Grady Rogers and E. P. Livingston.

JOHNSON, District Judge.

This is an action by the United States, as plaintiff, against Grady Rogers and E. P. Livingston—each as a member of the Board of Registrars of Macon County, Alabama—The Board of Registrars of Macon County, Alabama, and the State of Alabama, as defendants.

The action is brought under Part IV of the Civil Rights Act of 1957 (P.L. 85–315, 42 U.S.C.A. § 1971(c) [1] to obtain preventive relief against acts and practices by the named defendants which deprive other persons of rights and privileges secured by § 1971(a) of Title 42 U.S.C.A., namely, the right and privilege of citizens of the United States, who are otherwise qualified by law to vote at any election by the people in the State of Alabama, to be entitled and allowed to vote at all such elections without distinction of race or color.

The plaintiff says that each of the named defendants, being under a constitutional obligation to fulfill certain duties and obligations relative to registering qualified applicants of Macon County, Alabama, to vote without regard to considerations of race or color, has, for many years, persisted in acts and practices in violation of this constitutional obligation, which acts and practices have resulted in depriving qualified citizens of their right to vote solely because of their race and color.

Originally the action did not include the State of Alabama as a defendant. However, the action was, pursuant to the provisions of Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A., amended on February 23, 1959, to add as an additional party defendant the State of Alabama.

Plaintiff details the "acts and practices" the defendants are alleged to engage in in violation of their constitutional obligations and seeks to have this Court adjudge those acts and practices to be in violation of the Constitution and laws of the United States and to declare that said defendants are under a legal duty not to engage in, or permit its agents, officials and agencies to engage in such practices. Plaintiff also seeks to have this Court permanently enjoin the named defendants, or any of the defendants' agents, officials, and/or agencies from engaging in said acts and practices.

On February 12, 1959, the plaintiff, by appropriate motion and supporting documents, moved this Court for an order directing the defendants to produce and permit the inspection, copying, and photographing of certain records, documents, and papers. This Court, upon proper application, issued on February 12, 1959, a temporary restraining order pending disposition of said motion to produce, restraining the defendants and/or their agents from destroying or otherwise rendering unavailable certain voting and registration records and other enumerated documents made and received by the Macon County, Alabama,

1. § 1971(c). "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. In any proceeding hereunder the United States shall be liable for costs the same as a private person."

Board of Registrars since January 1, 1954. The motion to produce, the order that was entered upon the motion to produce, and the temporary restraining order were amended on February 23, 1959, to include defendant State of Alabama.

The defendants Rogers, Livingston, and The Board of Registrars of Macon County, Alabama, separately and severally (1) move to dismiss the action as to each of them (amended February 23, 1959); (2) move to "strike and quash" the service upon each of them of the various papers in this cause; (3) object to plaintiff's motion to produce; and (4) move to dissolve as to each of them the temporary restraining order issued by this Court on February 12, 1959. The defendant State of Alabama also moves to dismiss the action as to it.

All of said defendants' motions and objections are now submitted to the Court upon the pleadings, certain affidavits and documents attached thereto, evidence by deposition, written briefs of all parties, and oral arguments of counsel.

Considering first the defendants Rogers, Livingston, and The Board of Registrars' amended motion to dismiss, with the supporting affidavits of the defendants Rogers and Livingston, it appears that said motion cites some sixteen grounds in support thereof. The grounds fall into four general categories. They are: (1) The State of Alabama is an indispensable party; (2) the action is precluded by the Eleventh Amendment to the Constitution of the United States; (3) no relief can be had against defendants Rogers and Livingston because they

had resigned; and (4) the Civil Rights Act of 1957 authorizes suits only against individual persons.

Because of the conclusions hereinafter reached by this Court, it will not be necessary in connection with the motions of Rogers, Livingston, and The Board of Registrars, to discuss or decide the questions involved in the first two categories.

■ Proceeding then to the third category of points (i. e., no preventive relief should be granted against Livingston and Rogers because they had resigned as registrars), the evidence presented—in the form of uncontroverted affidavits—shows that the members of the Board of Registrars of Macon County, Alabama, prior to December 10, 1958, were Grady Rogers and E. P. Livingston, the third member having died.[2] On December 10, 1958,[3] Livingston and Rogers each tendered to the appointing authority[4] a written resignation as a member of the Board of Registrars of Macon County, Alabama. Said resignations were submitted during a controversy between the Commission on Civil Rights and certain Alabama officials, including Livingston and Rogers, over the right of said Commission to inspect and copy some of the same records the plaintiff in this case now seeks.[5] Both Rogers and Livingston now say that said resignations were absolute and unconditional; that they were made in good faith, and that neither intends to serve again as a member of the Board of Registrars; that said resignations have been accepted by the appointing board, and that each of them has qualified and begun serving in two other public offices.[6] Both Livingston and Rogers testify that

---

2. In Alabama, registration of voters in each county is conducted by "a board of three reputable and suitable persons * * *." Title 17, § 21, 1940 Code of Alabama, as amended.

3. Approximately two months before this case was filed.

4. Appointing authority in Alabama is vested in the governor, auditor and commissioner of agriculture and industries, or by a majority of them acting as a board

of appointment. See Title 17, § 21, 1940 Code of Alabama, as amended.

5. In re Wallace, 170 F.Supp. 63, this court on January 5, 1959, ordered these same two defendants to make said records available; said order was complied with, and both Livingston and Rogers were dismissed from said action.

6. Rogers was in May, 1958, nominated for and in November, 1958, elected to the Alabama House of Representatives; he was sworn in and commenced serving as

all of the records now sought by plaintiff were turned over to the sheriff of Macon County, Alabama, by them on December 8, 1958; that such action by them was in response to a *subpoena duces tecum* issued at the instance of Tom F. Young, Circuit Solicitor of the Fifth Judicial Circuit of Alabama. Solicitor Young testifies by deposition in this cause and the effect of his testimony is to substantiate that part of Livingston's and Rogers' testimony. Solicitor Young unequivocally states that he now has the custody of said records and that said records are in a locked room in the courthouse of Macon County, Alabama.

*The Defendants Livingston and Rogers:*

The matter is therefore focused as to Livingston and Rogers. If, as they contend, their resignations were effective in all respects, they cannot now be sued in their capacity as registrars of Macon County, Alabama.[7]

If, however, as the plaintiff contends, they have the continuing obligations of their office as registrars of Macon County, Alabama, until their successors are appointed,[8] they are proper parties to this action.

The statute prescribing the terms of office for the registrars in Alabama, designated as § 22 of Title 17, 1940 Code of Alabama, as amended, is as follows:

"§ 22. *Terms of office.*—The registrars so appointed under this article may be removed at the will of the appointing board, or a majority of the members thereof, at any time, with or without cause, and without giving their reasons therefor; and if not so removed, the registrars may hold office for four years from the time of their appointment and until their successors are appointed."

The plaintiff reasons that the word "may" as used in this statute is to be construed to mean "shall" wherever the rights of the public or third persons depend upon the exercise of the power or performance of the duty to which it refers. Such a theory is not without supporting authority—even in Alabama. See Montgomery v. Henry, 1905, 144 Ala. 629, 39 So. 507, 1 L.R.A.,N.S., 656.[9]

However, the real question here is: What did the Legislature of Alabama intend? There are no cases directly in point. In making an effort to resolve this question it is significant to note that Alabama has a general statute relating to terms of office. This general statute, designated as Title 41, § 176, 1940 Code of Alabama, as amended, reads as follows:

"*Vacancies in state and county offices; how filled; term of office.*— Vacancies in all state and county offices are filled by appointment of the governor, except as otherwise provided; the appointees must be commissioned, and they shall hold their offices for the unexpired term, and until their successors are elected and qualified."

It can very readily be seen that § 176 of Title 41 is not applicable to the registrars because of that portion of § 176 that says "except as otherwise provided"; this is true since it is "otherwise provided" in § 22 of Title 17, supra. Thus, insofar as the term of office for registrars is concerned, § 22 of Title 17 is generally controlling.

This Court is of the opinion that had the Legislature of the State of Alabama intended for the registrars to remain obligated to serve until their successors were appointed and qualified they

---

such official in January, 1959. Livingston was appointed to be a jury commissioner for Macon County sometime after this suit was filed.

7. This Court does not understand that Livingston and Rogers are sued in any capacity other than as members of the Board of Registrars; their appearance

in this cause as "individuals" was unnecessary.

8. No successors have yet been appointed.

9. Also see Wilson v. United States, 3 Cir., 135 F.2d 1005; Vason v. City of Augusta, 38 Ga. 542, and People ex rel. Moffett v. Turnbull, 184 Ill.App. 151.

would not have used the permissive term "may" but would have used the imperative term "shall" as they did in the general statute, supra.

In Badger v. U. S. ex rel. Bolles, 1876, 93 U.S. 599, 23 L.Ed. 991, which case is heavily relied upon by the plaintiff, the Supreme Court had before it for interpretation a statute of the State of Illinois, the pertinent part of that statute being "they shall hold their offices until their successors shall be qualified." The question there before the court was whether or not certain officers, to-wit, a supervisor, town clerk, or justice of the peace, could resign their offices and thereby be relieved of their duties and responsibilities prior to the time their successor was appointed or chosen and was qualified. Mr. Justice Hunt, delivering the opinion of the Supreme Court of the United States in October, 1876, decided this question by stating:

"The resignations may be made to and accepted by the officers named; but, to become perfect, they depend upon and must be followed by an additional fact; to-wit, the appointment of a successor, and his qualification."

The court went on to say:

"So, we think, where a person being in an office seeks to prevent the performance of its duties to a creditor of the town, by a hasty resignation, he must see that he resigns not only *de facto*, but *de jure*; that he resigns his office not only, but that a successor is appointed. An attempt to create a vacancy at a time when such action is fatal to the creditor will not be helped out by the aid of the courts."

Another case relied upon by the United States to sustain its position that Livingston and Rogers cannot resign until their successors have been appointed and qualified is the case of United States v. Green, 8 Cir., 1892, 53 F. 769. The applicable law there was part of the Constitution of Missouri, 1875, art. 14, § 5, V.A.M.S., reading as follows:

"In the absence of any contrary provision, all officers * * * hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified." [10]

A similar point was also raised in United States ex rel. Watts v. Justices of Lauderdale County, 6 Cir., 1882, 10 F. 460; this case involved a Tennessee statute which stated that "every officer shall hold his office until his successor is elected or appointed, and qualified." Const. art. 7, § 5.

The rationale of the Badger, Green, and Lauderdale cases is that the acceptance by an individual of a public office and the awarding of this office upon an individual is "the imposition of a public trust be agreement between the state and the officeholder. Why may not the state attach as a condition to the bestowal of the honors and compensation growing out of the trust, that it shall not be surrendered until the state has designated a successor, so that the public interests shall not suffer?" That rationale appears to be good, consistent, and legally sound insofar as it relates to the Illinois, the Missouri, and the Tennessee statutes. However, it is not sound and it cannot be made applicable as to the Alabama statute. To hold that Registrars Livingston and Rogers entered into an agreement with the State of Alabama, when they accepted the appointment of registrars of Macon County, to the effect that they "shall" or "must" or "would" continue in said office until their successors had been appointed and qualified would be to disregard completely the wording of the Alabama statute.

10. It should also be noted that in the Green case the process sought to be enforced (mandamus) was made final before the officials attempted to resign. The court seemed to attach considerable significance to that fact, saying: "Their attempt to thus escape the judgment of this court was as abortive as it was ill advised."

To so hold would be to disregard completely the intent of the Legislature of the State of Alabama, which intent is manifested by the wording of that statute.

To so hold would be to disregard completely § 160, Title 41 of the 1940 Code of Alabama, as amended,[11] which statute specifically recognizes and provides that such offices can be vacated "By * * * resignation, except in such cases as are excepted by law." There are no exceptions in the case of registrars. In this connection, see Amy v. City of Watertown, 1888, 130 U.S. 301, 316, 9 S.Ct. 530, 535, 32 L.Ed. 946, in which case the Supreme Court recognized that the statute law of Wisconsin providing for the procedure to be followed in cases of resignation "was decisive" and "preclude the operation of any such rule as was recognized in Badger v. Bolles * * *"

Under the Alabama law, Registrars Livingston and Rogers (as well as any other registrars that accept an appointment while § 22 of Title 17 is in effect) accepted their apointments and agreed to serve "at the will of the appointing board" and with the understanding that they could be removed at any time by a majority of the appointing board (the governor, auditor and commissioner of agriculture and industries) "with or without cause, and without giving their reasons therefor." For this Court to follow the Badger, the Green, and the Lauderdale cases and to apply the rationale of those cases to this case would also mean that the registrar who accepted a position under a statute which said he "may hold office for four years" (subject to removal at the possible whim of the appointing board) could not for reasons of health or business, or other good and substantial reasons, in good faith terminate his office by resignation until the appointing authority decided to appoint his successor and until his successor got around to qualifying. This Court must and does now hold that the Legislature of the State of Alabama, in using the word "may" intended that the registrars not be required to hold office for four years from the time of their appointment, but that they "may" be removed with or without cause by the appointing board and that they "may" in good faith resign their office. Such an interpretation works no great hardship upon anyone. It does not permit any widespread conspiracy to defeat the law, it does not necessarily permit the paralyzation of governmental functions that are necessary to organized society, and it does not permit any "hiatus or interragnum," since the remedy of mandamus, if the circumstances warrant and justify its use, is always available to require the appointing board to fill, if they refuse to act within a reasonable time, any vacancies that may be created, such as these.

Nothing stated in this opinion should be construed to mean that this Court sanctions or will sanction the proposition (here unnecessarily advanced by Livingston and Rogers) that registrars are free to resign at will, indiscriminately and in bad faith, and thereby cast off all of their responsibilities and obligations as such officers.

*The Defendant "The Board of Registrars of Macon County, Alabama":*

 The next category of points raised by the motion to dismiss relates only to the defendant "The Board of Registrars of Macon County, Alabama." It is contended that this Court has no jurisdiction over the Board of Registrars as such, because, first, said Board is not in

11. "§ 160. *How offices are vacated.*—Any office in this state is vacated:

"By the death of the incumbent.

"By his resignation, except in such cases as are excepted by law.

"By ceasing to be a resident of the state, or of the division, district, circuit, or county, for which he was elected or appointed.

"By the decision of a competent tribunal declaring his election or appointment void, or his office vacant.

"By the act of the legislature abridging his term of office, when the same is not fixed by the constitution.

"In such other cases as are or may be declared by law."

fact or in law a separate suable legal entity, and, second, the Board is not a "person" within the meaning of that section of the Civil Rights Act authorizing preventive relief suits such as this one.[12]

Registration in Alabama is provided for in § 186 of the Alabama Constitution of 1901 and Title 17, § 21 of the 1940 Code of Alabama, as amended.[13] It is the individuals on the Board, and not the Board itself, that conduct the registration; it is the individuals on the Board who may by their "acts and practices" deprive other persons of rights and privileges secured by the Constitution of the United States; it is the individual members of the Board who are under a constitutional obligation relative to registering qualified applicants of Macon County, Alabama, to vote. Therefore, it is the *individual* officers that preventive relief—here in the form of injunctions—must be obtained against.

In Handy Cafe, Inc. v. Justices of the Superior Court, 1 Cir., 1957, 248 F.2d 485, 487, certiorari denied March 10, 1958, 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed. 2d 580, the plaintiff sued, under § 1983, Title 42 U.S.C.A.[14] (an old Civil Rights statute), "the members of the Superior Court and Supreme Judicial Court of the Commonwealth of Massachusetts." Plaintiff there claimed deprivation of certain constitutional rights by those defendants, under color of their respective offices and that it (the plaintiff) had been denied the equal protection of the laws, contrary to the Fourteenth Amendment. The plaintiff there sought declaratory relief and an injunction.

With reference to whether or not "the members of the Superior Court and Supreme Judicial Court" constituted a suable legal entity, the first Circuit Court of Appeals in a *per curiam* opinion[15] stated:

"In addition to the foregoing, we are bound to observe that we know of no authority to the effect that 'the members of the Superior Court and Supreme Judicial Court of the Commonwealth of Massachusetts' constitute suable legal entities. Action under the Civil Rights Act must be against the individual persons or officials who, under color of their respective state offices, subject a person to denial of federal constitutional rights. There are over thirty judges of the Massachusetts Superior Court throughout the Commonwealth and seven justices of the Supreme Judicial Court. Obviously not all of these persons could have been concerned with the various state court proceedings herein complained of. It does not appear against which individuals judgments for damages and enforcement orders are sought to be issued.

"All in all, we regard this as a completely preposterous case."

Also in point here is the case of Hewitt v. City of Jacksonville, 5 Cir., 1951, 188 F.2d 423, 424, where the court, speaking through Judge Holmes, said:

"The lower court, in refusing to allow the amended complaint to be filed, held that the word 'persons' used in the Civil Rights statute, 8 U.S.C.A. § 43, *does not include a State* or its governmental subdivisions acting in their sovereign * * capacity." (Emphasis added.)

"We are in accord with the views expressed by the lower court;"

See also the Fifth Circuit case of Charlton v. City of Hialeah, (1951), 188 F.2d 421, which followed the Hewitt v. Jacksonville decision.

---

12. Sec. 1971(c), Title 42 U.S.C.A.

13. The pertinent part of that Code section being set out in footnote 2.

14. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable * * *."

15. Magruder, Chief Judge, and Woodbury and Hartigan, Circuit Judges, sitting.

Even though these cases involved another Civil Rights statute, this Court is of the opinion that the reasoning and conclusions reached are sound and should be applied in this case to plaintiff's action against "The Board of Registrars of Macon County, Alabama."

*The Defendant State of Alabama:*

The motion to dismiss filed by the State of Alabama contains some fifty-eight grounds. These grounds fall into five general categories. They are:

(1) Civil Rights Act of 1957 authorizes actions only against "individual persons" and not states.

(2) States have exclusive jurisdiction in the field of voting by reason of the Tenth and Eleventh Amendments to the Constitution of the United States.

(3) Supreme Court of the United States has original and exclusive jurisdiction in cases involving sovereign states.

(4) Civil Rights Act of 1957 (particularly Part IV) is unconstitutional.

(5) Even if this Court determines that it has jurisdiction and determines that the Act is constitutional, it should refrain from exercising jurisdiction in this case because of comity.

■ Category two is obviously without merit. Part of what this Court said in the case of In re Wallace, 170 F.Supp. 63, is applicable in this case and is dispositive of these points:

"The authority delegated to the Federal Government by the Fifteenth Amendment to the Constitution of the United States is undoubtedly the authority under which the Congress of the United States was acting when the Civil Rights Act of 1957 was passed. The provision in the Act providing for investigation of alleged discriminatory practices, including inspection of voting and other pertinent records, must be considered to be an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin. That part of the Act is, therefore, by this Court considered 'appropriate legislation' within the meaning of Section 2 of the Fifteenth Amendment.

"The sovereignty of the State of Alabama, or of any other of the states, must yield, therefore, to this expression of the Congress of the United States, since this expression of Congress—by this Act—was passed in a proper exercise of a power specifically delegated to the Federal Government, and the Court cites Ex Parte Siebold, 100 U.S. 371, 25 L.Ed. 717. This is necessarily true even though the states possess concurrent legislative jurisdiction with respect to voting, since the Federal Government, and its law, is supreme in this area. The Court cites Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449.

"The concept of the sovereignty of the states is embodied in the Tenth Amendment to the Constitution of the United States, this amendment providing that those powers are reserved to the states which have not been 'delegated to the United States by the Constitution, nor prohibited by it to the States.'

"Here we have involved the very powers which the Constitution of the United States says are not reserved to the states. See United States v. Reese, 92 U.S. 214, 23 L. Ed. 563; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, and Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116.

"The fact that the State of Alabama voting and registration records are involved in this case does not alter the legal principle at all. In re Cohen, 2 Cir., 62 F.2d 249; United States v. Ponder, 4 Cir., 238 F.2d 825; Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424.

"Thus, it must be generally concluded, and this Court now concludes, that since the Congress of

the United States did have the authority to pass the Civil Rights Act of 1957 and that said authority is supreme in this field as opposed to any authority of the states, and since the Commission on Civil Rights was in issuing the subpoenas in question acting pursuant to that Act, and since this Court was in issuing its order upon the application of the Attorney General of the United States also acting pursuant to said Act, the contention that movants make that enforcement of the subpoenas will constitute an illegal invasion of the sovereignty of the State of Alabama and the contention that this Court is without jurisdiction to enforce compliance with said subpoenas are without merit and cannot stand."

■ As to defendant's contention that the Supreme Court has original jurisdiction, there is no question. See Article III, § 2 of the Constitution of the United States. Also United States v. State of West Virginia, 295 U.S. 463, 470, 55 S.Ct. 789, 79 L.Ed. 1546, and United States v. State of California, 297 U.S. 175, 187, 56 S.Ct. 421, 80 L.Ed. 567. However, it is not true that this jurisdiction is exclusive. In the California case, supra, the Supreme Court held that venue properly lay in the district court in California in an appropriate case. See also State of New York v. United States, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326, and State of Colorado v. United States, 10 Cir., 219 F.2d 474. Here, there is in 42 U.S.C.A. § 1971(c) and (d), specific and unambiguous Congressional authorization for actions such as this one to be commenced in this Court.

■ Because of the conclusions hereinafter reached by this Court in connection with the State's motion and in keeping with the duty of any court to avoid constitutional questions unless essential to a proper disposition of a case,[16] this Court will not, at this time, pass upon the question of the constitutionality of Part IV of the Civil Rights Act of 1957. It is also unnecessary to discuss in this opinion the objections of the State upon the ground of comity.

■■ The category of objections remaining concern the question of whether or not the Civil Rights Act of 1957 authorizes actions for preventive relief by the Attorney General against states. Without any doubt, the Congress of the United States had the authority to grant such a right.[17] The question here is: Did it confer that authority in this Act? This Court is of the opinion that Congress did not intend for such actions against states to be authorized by this Act.

There is no doubt that such authority would be appropriate—and even in certain circumstances necessary—if Congress intended to give full and complete authority to the Attorney General of the United States to enforce the constitutional rights here involved. This Court judicially knows that the Civil Rights Act of 1957 was a compromise measure and the compromise reflected an intention on the part of Congress to give limited authority—as opposed to full and complete authority—in this field. A reading of the legislative history of this Act impresses this Court with the fact that if it had then been mentioned that this Act authorized the United States to sue a state for preventive relief, the Act would not yet be passed.[18] As a matter of fact, it is very definitely in-

16. For two recent cases reiterating this proposition see: Harmon v. Brucker, (1958), 355 U.S. 579, 581, 78 S.Ct. 433, 2 L.Ed.2d 503, and Byers v. Byers, 5 Cir., 1958, 254 F.2d 205, 208.

17. See the reasoning of this Court on the authority of the Federal Government in

the field of voting in the case of In re Wallace, supra.

18. In this connection, see the testimony and statements of Attorney General Brownell before Subcommittee No. 5 of the Committee on the Judiciary, House of Representatives, Eighty-fifth Congress, at pages 570, 589, 590, 591, 599, and 602.

ferred by the following statement of Attorney General Brownell that the Act was only to be used to obtain preventive relief against individual persons:[19]

"Mr. Brownell. It is my opinion that the bill before you from which you quoted does not increase the Department's jurisdiction in connection with State primary elections. At the present time, our jurisdiction is limited to commencing criminal proceedings under sections 241 and 242, which are the criminal provisions of the civil-rights laws. Under 242, it is necessary that the wrongdoer be a State officer. In other words, that he be acting under color of law. Under section 241, you have to prove a conspiracy. The statute operates only against conspirators, in other words."

The Court must presume, therefore, that Congress in using only the word "person" deliberately restricted the authority of the Attorney General to institute such actions. Such reasoning as now used and the conclusion as is now reached is analogous to the reasoning and conclusion of the Supreme Court of the United States in United States v. United Mine Workers of America, 1947, 330 U.S. 258, 275, 67 S.Ct. 677, 687, 91 L.Ed. 884. In that case, the court held, among other things, that the Norris-La-Guardia Act, 29 U.S.C.A. § 101 et seq. did not apply to the "Government in all cases" and observed:

"The Act does not define 'persons'. In common usage that term does not include the sovereign, and statutes employing it will ordinarily not be construed to do so. * * * The absence of any comparable provision extending the term to *sovereign governments* implies that Congress did not desire the term to extend to *them*." (Emphasis added.)

In accordance with the foregoing, an appropriate order will be entered dismissing this action as to each of the defendants.

Since the action is to be dismissed as to all defendants, the motion to produce, as to each of them and their objections thereto, and the motion to strike and quash service are moot.