**100**

Hosea WILLIAMS, John Lewis and Amelia Boynton, on behalf of themselves and others similarly situated, Plaintiffs,

United States of America, Plaintiff-Intervenor,

v.

Honorable George C. WALLACE, as Governor of the State of Alabama, Al Lingo, as Director of Public Safety for the State of Alabama, and James G. Clark, as Sheriff of Dallas County, Alabama, Defendants.

Civ. A. No. 2181-N.

United States District Court
M. D. Alabama, N. D.

March 17, 1965.

Order March 19, 1965.

Fred D. Gray and Solomon S. Seay, Jr., Montgomery, Ala., Peter A. Hall, Oscar W. Adams, Jr., Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Norman Amaker, Charles H. Jones, Jr., James M. Nabrit, III, and Charles S. Ralston, New York City, for plaintiffs.

Ben Hardeman, U. S. Atty., Montgomery, Ala., John Doar, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and David Reuben, Atty., Dept. of Justice, Washington, D. C., for plaintiff-intervenor.

Maury D. Smith, Charles M. Crook and John S. Bowman of Goodwyn & Smith, Montgomery, Ala., for defendants Wallace and Lingo.

John P. Kohn, Jr., Montgomery, Ala., for defendant Lingo.

McLean Pitts, P. H. Pitts, J. E. Wilkinson, Jr., and T. G. Gayle, Selma, Ala., for defendant Clark.

JOHNSON, District Judge.

The plaintiffs as Negro citizens and the members of the class they represent filed with this Court on March 8, 1965, their complaint, motion for temporary restraining order and motion for a preliminary injunction. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and (4). This action, authorized by 42 U.S.C. § 1971(a) and (b) as amended and 42 U.S.C. §§ 1981 and 1983, seeks relief from the denial of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States and seeks redress of the deprivation of rights, privileges and immunities guaranteed by the First, Fourteenth and Fifteenth Amendments to the Constitution of the United States, as implemented by the above-identified Congressional enactments. On March 10, 1965, the United States of America, by leave of this Court, filed its complaint in intervention. This intervention complaint was filed pursuant to an order of this Court designating the United States as a party and pursuant to the provisions of § 902 of the Civil Rights Act of 1964 (Public Law 88–352, July 2, 1964). The Attorney General of the United States certifies that this case is of general importance, and his certificate is attached to the intervention complaint.

The defendant George C. Wallace is the Governor and chief executive officer of the State of Alabama. The defendant Albert J. Lingo is the Director of Public Safety of the State of Alabama, and the defendant James G. Clark, Jr., is the Sheriff of Dallas County, Alabama. The Governor as the chief executive officer of the State of Alabama is charged with the faithful execution of the laws of the State of Alabama and of the United States of America; in such capacity, the Governor controls and supervises the defendant Albert J. Lingo, and through the defendant Lingo the Governor controls and directs the activities of the Alabama Highway Patrol, also known as the Alabama State Troopers. The defendant Lingo as director is in the active control of the Alabama Highway Patrol.

The plaintiffs seek to have this Court guarantee their right to assemble and demonstrate peaceably for the purpose of redressing their grievances concerning the right to register to vote in the State of Alabama without unlawful interference. Included in the rights plaintiffs seek and ask this Court to adjudicate is that of walking peaceably along the public highway in the State of Alabama between Selma and Montgomery. Plain-

tiffs also ask this Court to enjoin and restrain the defendants and all persons acting in concert with them from arresting, harassing, threatening, or in any way interfering with their peaceful, non-violent march from Selma, Alabama, to Montgomery, Alabama, for the purpose of protesting injustices and petitioning their State goverment, particularly the chief executive officer—the Governor—for redress of grievances.

By order made and entered in this case on March 9, 1965, this Court denied the plaintiffs' application for a restraining order, which was sought without any notice to the defendants and without a hearing. At the same time, upon being informed that the plaintiffs intended to continue to attempt their mass marching along the public highway of the State of Alabama between Selma and Montgomery before this Court had had an opportunity to adjudicate the respective rights of the parties, this Court entered an order temporarily restraining any further attempts on the part of the plaintiffs to enforce the rights they ask this Court to judicially determine until the matter could be heard commencing Thursday, March 11, 1965. Plaintiffs were restrained by this Court pursuant to the authority of Title 28, § 1651, United States Code, with the purpose of the temporary restraining order being necessary and appropriate in aid of this Court's jurisdiction.[1] Issue was joined by the defendants upon plaintiffs' and plaintiff-intervenor's complaints, with the defendant Governor Wallace, in addition to joining issue, asking this Court to enjoin and restrain the plaintffs and other members of their class from con-tinuing any march or mass demonstration along or upon U. S. Highway 80 between Selma, Alabama, and Montgomery, Alabama, or along or upon any other public highway within the State of Alabama.

This submission is upon the pleadings, the testimony of numerous witnesses taken over a period of four and one-half days, and the several exhibits offered and admitted in connection with that testimony. Upon this submission, this Court now proceeds in this memorandum opinion to make appropriate findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

Under Alabama law, registration is prerequisite to voting in any election. In several counties in central Alabama, including Dallas County wherein Selma, Alabama, is located, fewer than 10% of the Negroes of voting age are registered to vote.[2] For the purpose of obtaining better political representation for Negro citizens in these counties, the Negro communities, through local and national organizations, have conducted voter registration drives in recent years. These voter registration drives in Dallas and other central Alabama counties have been intensified since September, 1964. Public demonstrations have been held in these several counties, particularly in Dallas County, for the purpose of encouraging Negroes to attempt to register to vote and also for the purpose of protesting discriminatory voter registration practices in Alabama. The demonstrations have been peaceful. At the same time, cases have been filed in the United States District Courts in this district[3]

1. This temporary restraining order, being designed only to protect this Court's jurisdiction, pending a hearing and adjudication of the rights of the parties, has served its purpose with the filing of this order, and, therefore, expires.

2. See Appendix "A" for registration statistics compiled for Dallas, Perry, Wilcox, Hale, Choctaw and Marengo Counties. As to Lowndes County, the evidence reflects that no Negroes are regis-tered to vote although the Negro population in Lowndes County is considerably in excess of 50% of the total population of that county.

3. United States v. Penton (for Montgomery County), D.C., 212 F.Supp. 193 (1962); United States v. State of Alabama (for Macon County), 171 F.Supp. 720 (1959), 267 F.2d 808, vacated and remanded 362 U.S. 602, 80 S.Ct. 924, 4 L. Ed.2d 982; United States v. State of Ala-

and also in the Southern District of Alabama;[4] these cases are designed to secure to Negro citizens their right to register to vote in several central Alabama counties.

As reflected by Appendix "A" to this opinion, the efforts of these Negro citizens to secure this right to register to vote in some of these counties, have accomplished very little. For instance, in Dallas County, as of November, 1964, where Negro citizens of voting age outnumber white citizens of voting age, only 2.2% of the Negroes were registered to vote. In Perry County as of August, 1964, where the Negro citizens of voting age outnumber white citizens, only 7% of the Negroes were registered to vote. In Wilcox County as of December, 1963, where the Negro citizens of voting age outnumber white citizens over two to one, 0% of the Negro citizens were registered to vote as contrasted with the registration of 100% of the white citizens of voting age in this county. In Hale County, where Negro citizens of voting age outnumber white citzens, only 3.6% of these Negro citizens have been registered to vote. The evidence in this case reflects that, particularly as to Selma, Dallas County, Alabama, an almost continuous pattern of conduct has existed on the part of defendant Sheriff Clark, his deputies, and his auxiliary deputies known as "possemen" of harassment, intimidation, coercion, threatening conduct, and, sometimes, brutal mistreatment toward these plaintiffs and other members of their class who were engaged in their demonstrations for the purpose of encouraging Negroes to attempt to register to vote and to protest discriminatory voter registration practices in Alabama. This harassment, intimidation and brutal treatment has ranged from mass arrests without just cause to forced marches for several miles into the countryside, with the sheriff's deputies and members of his posse herding the Negro demonstrators at a rapid pace through the use of electrical shocking devices (designed for use on cattle) and night sticks to prod them along. The Alabama State Troopers, under the command of the defendant Lingo, have, upon several occasions, assisted the defendant Sheriff Clark in these activities, and the State troopers, along with Sheriff Clark as an "invited guest," have extended the harassment and intimidating activities into Perry County, where, on February 18, 1965, when approximately 300 Negroes were engaged in a peaceful demonstration by marching from a Negro church to the Perry County Courthouse for the purpose of publicly protesting racially discriminatory voter registration practices in Perry County, Alabama, the Negro demonstrators were stopped by the State troopers under the command of the defendant Lingo, and the Negro demonstrators were at that time pushed, prodded, struck, beaten and knocked down. This action resulted in the injury of several Negroes, one of whom was shot by an Alabama State Trooper and subsequently died.

In Dallas County, Alabama, the harassment and brutal treatment on the part of defendants Lingo and Clark, together with their troopers, deputies and "possemen," and while acting under instructions from Governor Wallace, reached a climax on Sunday, March 7, 1965. Upon this occasion approximately 650 Negroes left the church in Selma, Alabama, for the purpose of walking to Montgomery, Alabama, to present to the defendant Governor Wallace their grievances concerning the voter registration processes in these central Alabama counties and concerning the restrictions and the manner in which these restrictions had been imposed upon their public demonstrations. These Negroes proceeded in an orderly and peaceful manner to a bridge

bama (for Bullock County), Civil Action No. 1677–N, Sept. 3, 1961; United States v. Cartwright (for Elmore County), 230 F.Supp. 873 (1964).

4. United States v. Atkins (concerning Dallas County), 210 F.Supp. 441, reversed, 5th Cir., 323 F.2d 733, and United States v. Mayton (relating to Perry County), 9 Cir., 335 F.2d 153.

near the south edge of the City of Selma on U. S. Highway 80 that leads to Montgomery, Alabama, which is located approximately 45 miles east of Selma. They proceeded on a sidewalk across the bridge and then continued walking on the grassy portion of the highway toward Montgomery until confronted by a detachment of between 60 to 70 State troopers headed by the defendant Colonel Lingo, by a detachment of several Dallas County deputy sheriffs, and numerous Dallas County "possemen" on horses, who were headed by Sheriff Clark. Up to this point the Negroes had observed all traffic laws and regulations, had not interfered with traffic in any manner, and had proceeded in an orderly and peaceful manner to the point of confrontation. They were ordered to disperse and were given two minutes to do so by Major Cloud, who was in active command of the troopers and who was acting upon specific instructions from his superior officers. The Negroes failed to disperse, and within approximately one minute (one minute of the allotted time not having passed), the State troopers and the members of the Dallas County sheriff's office and "possemen" moved against the Negroes. The general plan as followed by the State troopers in this instance had been discused with and was known to Governor Wallace. The tactics employed by the State troopers, the deputies and "possemen" against these Negro demonstrators were similar to those recommended for use by the United States Army to quell armed rioters in occupied countries. The troopers, equipped with tear gas, nausea gas and canisters of smoke, as well as billy clubs, advanced on the Negroes. Approximately 20 canisters of tear gas, nausea gas, and canisters of smoke were rolled into the Negroes by these State officers. The Negroes were then prodded, struck, beaten and knocked down by members of the Alabama State Troopers. The mounted "possemen," supposedly acting as an auxiliary law enforcement unit of the Dallas County sheriff's office, then, on their horses, moved in and chased and beat the fleeing Negroes. Approximately 75 to 80 of the Negroes were injured, with a large number being hospitalized.

The acts and conduct of these defendants, together with the members of their respective enforcement agencies, as outlined above, have not been directed toward enforcing any valid law of the State of Alabama or furthering any legitimate policy of the State of Alabama, but have been for the purpose and have had the effect of preventing and discouraging Negro citizens from exercising their rights of citizenship, particularly the right to register to vote and the right to demonstrate peaceably for the purpose of protesting discriminatory practices in this area. By these actions and by this conduct, the defendants, together with other members of their enforcement agencies, have intimidated, threatened and coerced Negro citizens in this section of Alabama for the purpose of interfering with these citizens and preventing them from exercising certain of their basic constitutional rights —i. e., the right to register to vote, peaceably assemble, remonstrate with governmental authorities and petition for redress of grievances. The attempted march alongside U. S. Highway 80 from Selma, Alabama, to Montgomery, Alabama, on March 7, 1965, involved nothing more than a peaceful effort on the part of Negro citizens to exercise a classic constitutional right; that is, the right to assemble peaceably and to petition one's government for the redress of grievances. Cox v. State of Louisiana (Jan. 18, 1965), 85 S.Ct. 453; Edwards v. South Carolina, 372 U.S. 229, 83 S. Ct. 680, 9 L.Ed.2d 697 (1963); Fields v. South Carolina, 375 U.S. 44, 84 S. Ct. 149, 11 L.Ed.2d 107 (1963) (reversing State v. Fields, 240 S.C. 366, 126 S.E.2d 6 on the basis of Edwards v. South Carolina); Kelly v. Page, 335 F. 2d 114 (C.A. 5, 1964); Young v. Davis, 9 RRLR 590 (M.D.Fla.1964), including the right to come to the capitol of the government against which the grievances exist, "to assert any claim * * * [one] may have upon that government,"

and "to seek its protection" (Crandall v. State of Nevada, 6 Wall. 35, 44, 18 L.Ed. 744 (1867)), and the right—part of the "liberty" of which the citizen cannot be deprived without due process of law—to travel freely within the country, Kent v. Dulles, 357 U.S. 116, 125–126 (1958); Edwards v. People of State of California, 314 U.S. 160, 177–181, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (concurring opinion of Mr. Justice Douglas); Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900); Crandall v. State of Nevada, 6 Wall. 35, 44, 18 L.Ed. 744 (1867); Passenger Cases, 7 How. 283, 492, 12 L.Ed. 702 (1849).

■ The law is clear that the right to petition one's government for the redress of grievances may be exercised in large groups. Indeed, where, as here, minorities have been harassed, coerced and intimidated, group association may be the only realistic way of exercising such rights. For instance, in Edwards v. South Carolina, supra, the Supreme Court of the United States invalidated as an infringement of the rights of free speech, free assembly and freedom to petition, the convictions of 187 students who had peaceably assembled at the site of the state government for the purpose of petitioning their government for redress of grievances. In Fields v. South Carolina, supra, breach-of-peace convictions were struck down where students had protested by marching along the streets in three groups totaling approximately 1,000; this march was for the purpose of petitioning for the redress of grievances. And in the more recent case of Cox v. Louisiana, supra, the Supreme Court invalidated the breach-of-peace conviction against the leader of a march of some 1,500 to 2,000 students on the Louisiana State Capitol Building, the purpose of the march being to protest segregation and discrimination against Negro citizens.

■ This Court recognizes, of course, that government authorities have the duty and responsibility of keeping their streets and highways open and available for their regular uses. Government authorities are authorized to impose regulations in order to assure the safety and convenience of the people in the use of public streets and highways provided these regulations are reasonable and designed to accomplish that end. As to any conflict that may arise in such areas, the Fifth Circuit Court of Appeals has stated in Kelly v. Page, 335 F.2d 114 (July 1964), "there is room in our system of government for both, once the proper balance between them is drawn." As has been demonstrated above, the law in this country constitutionally guarantees that a citizen or group of citizens may assemble and petition their government, or their governmental authorities, for redress of their grievances even by mass demonstrations as long as the exercise of these rights is peaceful. These rights may also be exercised by marching, even along public highways, as long as it is done in an orderly and peaceful manner; and these rights to assemble, demonstrate and march are not to be abridged by arrest or other interference so long as the rights are asserted within the limits of not unreasonably interfering with the exercise of the rights by other citizens to use the sidewalks, streets and highways, and where the protestors and demonstrators are conducting their activities in such a manner as not to deprive the other citizenry of their police protection. As was stated in Kelly v. Page, supra, there must be in cases like the one now presented, a "constitutional boundary line" drawn between the competing interests of society. This Court has the duty and responsibility in this case of drawing the "constitutional boundary line." In doing so, it seems basic to our constitutional principles that the extent of the right to assemble, demonstrate and march peaceably along the highways and streets in an orderly manner should be commensurate with the enormity of the wrongs that are being protested and petitioned against. In this case, the wrongs are enormous. The extent of the right to demonstrate against these wrongs should be determined accordingly. This

is true even though it is recognized that the right to exercise constitutional rights by marching alongside a public highway must be narrowed in the sense that such a right is subject to greater regulation and in the sense that greater abridgement of the right may, depending upon the circumstances, be warranted. This Court is, of course, concerned in this case only with the right to demonstrate and protest by marching along the public highway from Selma, Alabama to Montgomery, Alabama. U. S. Highway 80, running between these two points, is not a limited access highway; it is a four-laned highway for approximately two-thirds of the distance between Selma and Montgomery, Alabama; it is a two-laned highway for the remaining distance. There is an average "shoulder" six feet wide on each side of the highway that is four-laned; there is an average three-foot "shoulder" along that portion of the highway that is two-laned. Cross-overs are regularly constructed or located along the portion that is four-laned. This highway, according to the law of the State of Alabama, is open for pedestrian traffic.[5] Thus, a reasonable use of the highways for the purpose of pedestrian marching is guaranteed not only by the Constitution of the United States according to the principles above set out, but is specifically authorized by the law of the State of Alabama. The proclamation as issued by the Governor of the State of Alabama on March 6, 1965, absolutely banning any march by any manner—regardless of how conducted—and stating that such a march will not be tolerated, constituted an unreasonable interference with the right of Negro citizens engaged in the march to use U. S. Highway 80 in the manner they were seeking to use it on Sunday, March 7, 1965. Such a proclamation by the Governor of the State of Alabama, as enforced by the Alabama State Troopers and deputies and "possemen" of Dallas County, Alabama, stepped across the "constitutional boundary line" that lies between the interests of the public to use the highway in general and the right of American citizens to use it for the purpose of marching to the seat of their State government — Montgomery, Alabama—for the purpose of protesting their grievances. This interference by the defendants and those acting under their control and in concert with them with the attempted march from Selma, Alabama, to Montgomery, Alabama, along U. S. Highway 80 on March 7, 1965, constituted an unconstitutional deprivation of these Negro citizens' right of assembly and free movement within the State of Alabama along a public highway located therein and their right to petition their State government, and particularly their Governor, for redress of their grievances.

These plaintiffs, in recognition of the proposition that their constitutional right to march along U. S. Highway 80 for their intended purposes is not an unrestricted right, but, to the contrary, must be exercised, if exercised at all, within this "constitutional boundary," have filed with this Court as a part of the evidence in this case a proposed plan for a march from Selma, Alabama, to Montgomery, Alabama, along U. S. Highway 80. These plaintiffs propose that the march will commence on Friday, March 19, 1965, at 10:30 a. m., or any day thereafter provided that plaintiffs give at least 48 hours' advance notice of the intended march to the defendants, to the United States, and to this Court. The plaintiffs propose that there be no limitation on the number of marchers along that portion of U. S. Highway 80 that is four-laned; the plaintiffs further propose that, along that portion of the highway that is only two-laned, the number of marchers will not at any time exceed 300 persons. The plaintiffs further propose that the march-

---

5. Code of Alabama, Title 36, § 58(19) (b):
"Where sidewalks are not provided any pedestrian walking along and upon a highway shall when practicable walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction."

ers will proceed on the shoulders of the highway on the left side facing traffic; they will proceed two abreast, but will employ a single file at places along the highway where the shoulder is narrow and at bridges without sidewalks. The marchers will, according to the proposed plan, be organized in separate groups of approximately 50 persons; each of these groups will be under the supervision of a designated leader. Supporting services will be provided, such as food, washing and toilet facilities, litter and garbage pickup by trucks along the route and at campsites, and ambulance and first aid service. The proposed march, according to plaintiffs' plan, will proceed approximately 11 miles on the first day, stopping at a designated private field with permission of the owner, which has already been granted; approximately 11 miles on the second day, stopping at a designated field with permission of the owner, which has already been granted; approximately 17 miles the third day, stopping at a designated building and adjacent field with permission of the owners, which has already been granted, and, on the fourth day, approximately 8 miles to the western part of Montgomery, Alabama. The fifth day's march, as proposed by the plaintiffs, will be from the western part of Montgomery, Alabama, to the State Capitol. According to the plaintiffs' plan, large tents will be erected at the campsites by professionals, and meetings and song festivals will be held at the campsites at night. There will be no night marching and no destruction of public property; the march is to be orderly and peaceful and "otherwise observe the highest standards of dignity and decorum." A copy of the plaintiffs' plan, in much greater detail, is attached hereto as Appendix "B".

██ This Court finds the plaintiffs' proposed plan to the extent that it relates to a march along U. S. Highway 80 from Selma to Montgomery, Alabama, to be a reasonable one to be used and followed in the exercise of a constitutional right of assembly and free movement within the State of Alabama for the purpose of petitioning their State government for redress of their grievances. It is recognized that the plan as proposed and as allowed reaches, under the particular circumstances of this case, to the outer limits of what is constitutionally allowed. However, the wrongs and injustices inflicted upon these plaintiffs and the members of their class (part of which have been herein documented) have clearly exceeded—and continue to exceed—the outer limits of what is constitutionally permissible. As stated earlier in this opinion, the extent of a group's constitutional right to protest peaceably and petition one's government for redress of grievances must be, if our American Constitution is to be a flexible and "living" document, found and held to be commensurate with the enormity of the wrongs being protested and petitioned against. This is particularly true when the usual, basic and constitutionally-provided means of protesting in our American way—voting—have been deprived.[6] It must never be forgotten that our Constitution is "intended to endure for ages to come, and consequently to be adapted to the various crises of human affairs."[7] With an application of these

6. Examples as to the systematic and very effective deprivations of voting rights to Negro citizens in this area are demonstrated by Appendix "A" to this opinion. As to the methods used to accomplish this, see this Court's findings in United States v. State of Alabama, 171 F.Supp. 720, and United States v. Penton, 212 F. Supp. 193. The Courts have recognized that in the field of racial discrimination statistics such as those set out in Appendix "A" tell the basic story. United States v. State of Mississippi, D.C., 229

F.Supp. 925; State of Alabama v. United States (5th Cir. 1962), 304 F.2d 583, aff'd 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112; United States v. Edwards (5th Cir. 1964), 333 F.2d 575.

7. Mr. Chief Justice Stone in Opp Cotton Mills, Inc. v. Adm'r of Wage and Hour Div. (1941), 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624, quoting Mr. Chief Justice Marshall in McCulloch v. State of Maryland (1819), 4 Wheat. 316, 4 L.Ed. 579.

principles to the facts of this case, plaintiffs' proposed plan of march from Selma to Montgomery, Alabama, for its intended purposes, is clearly a reasonable exercise of a right guaranteed by the Constitution of the United States provided the march commences not earlier than March 19, 1965, and not later than March 22, 1965.

It is appropriate to note here that the defendants, having been served through their attorneys with copies of this plan, object to it, but offer no evidence in support of their contention that the plan, or any portion of it, is unreasonable. The defendants' contention that there is some hostility to this march will not justify its denial. Watson v. City of Memphis (1963), 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529; Cox v. Louisiana, supra. Nor will the threat of violence constitute an excuse for its denial. Cooper v. Aaron (1958), 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5.

It is also appropriate to note that neither the defendant Governor Wallace nor the defendant Sheriff Clark testified in this case.

These plaintiffs and the members of the class they represent are entitled to police protection in the exercise of this constitutional right to march along U. S. Highway 80 from Selma to Montgomery, Alabama. Hague v. C. I. O. (1939), 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Kelly v. Page (5th Cir. 1964), 335 F.2d 114; Downie v. Powers (10th Cir. 1951), 193 F.2d 760; United States v. Klans (M.D.Ala.1961), 194 F. Supp. 897. They are entitled to be protected by the law enforcement agencies of the State of Alabama against traffic and other hazards. This Court recognizes that, to afford the necessary protection for these marchers, there will be a considerable burden imposed upon the law enforcement agencies of the State of Alabama. Recognizing this, and recognizing the absolute necessity for providing this protection, this Court, after inquiry, has been informed by the attorneys representing the United States in this case that the United States Government stands ready, if requested by the Governor of the State of Alabama, to assist in providing police protection for this proposed march. This response to this Court's inquiry has been made with full recognition that the law imposes this duty upon the State of Alabama to provide this protection. This offer on the part of the United States to assist if requested is not—whether the offer is accepted or refused—to be construed as lessening the duty on the part of the State of Alabama law enforcement agencies to afford this protection.

What has been said in this opinion is not intended to declare or adjudicate the rights of citizens to assemble, petition, or protest within the City of Selma, Alabama, the City of Montgomery, Alabama, or any other municipal area since the exercise of such rights in each instance must be determined according to the facts and circumstances presented.

In accordance with the foregoing, an injunction will be issued by this Court enjoining the Governor of the State of Alabama, George C. Wallace; the Director of Public Safety for the State of Alabama, Albert J. Lingo; and the Sheriff of Dallas County, Alabama, James G. Clark, Jr., together with their agents, employees, successors in office, and all those in active concert or participation with them, from intimidating, threatening, coercing or interfering with the proposed march by these plaintiffs and other members of their class along U. S. Highway 80 from Selma, Alabama, to Montgomery, Alabama. Said defendants will also be enjoined from failing to provide adequate police protection to these plaintiffs in their exercise of this constitutional right. The motion of the defendant Governor for an injunction restraining the march will be denied. All relief sought by the plaintiffs in their motions and the United States in its motions except as herein specifically referred to, will be denied.

## PRELIMINARY INJUNCTION

This cause coming on to be heard upon the motions of the plaintiffs and the plaintiff-intervenor, United States of America, for a preliminary injunction and also upon the motion of the defendant Governor Wallace for a preliminary injunction, and due notice having been given to all parties, and the Court having considered the testimony offered in support of and in opposition to said motions and being fully advised in the premises, and for the reasons set forth in the memorandum opinion of this Court entered on this date and pursuant thereto, it is

Ordered, adjudged and decreed that, pending further order of this Court, George C. Wallace, as Governor of the State of Alabama, Albert J. Lingo, as Director of Public Safety for the State of Alabama, and James G. Clark, Jr., as Sheriff of Dallas County, Alabama, their successors in office, agents, representatives, employees, and other persons in active concert and participation with them be and each is hereby restrained and enjoined from:

(1) Arresting, harassing, threatening, or in any way interfering with the efforts to march or walk, or the marching or walking, by the plaintiffs, members of their class, and others who may join with them, along U. S. Highway 80 from Selma, Alabama, to Montgomery, Alabama, said march, as presently approved by this Court, to commence in Selma, Alabama, not earlier than Friday, March 19, 1965, and not later than Monday, March 22, 1965, and to terminate in Montgomery, Alabama; and

(2) Otherwise obstructing, impeding, or interfering with the peaceful, nonviolent efforts by said plaintiffs, members of their class, and others who may join with them, in protesting and demonstrating by assembling and by marching along U. S. Highway 80 from Selma, Alabama, to Montgomery, Alabama, as said march is proposed in plaintiffs' plan filed with this Court and served on the defendants on March 16, 1965, and to the extent that said plan is presently approved by this Court.

It is further ordered, adjudged and decreed that, pending further order of this Court, the defendants George C. Wallace, as Governor of the State of Alabama, Albert J. Lingo, as Director of Public Safety for the State of Alabama, and James G. Clark, Jr., as Sheriff of Dallas County, Alabama, their successors in office, agents, representatives, employees, and all others acting in concert with them, be and each is hereby restrained and enjoined from failing to provide police protection for the plaintiffs, members of their class, and others who may join with them, in their march, as presently scheduled and presently approved by this Court, to commence not earlier than Friday, March 19, 1965, and not later than Monday, March 22, 1965, along U. S. Highway 80 from Selma, Alabama, to Montgomery, Alabama.

It is further ordered, adjudged and decreed that the motion for preliminary injunction filed by the defendant Governor Wallace, the motion by the plaintiff-intervenor, United States of America, for relief in addition to that herein specifically granted, and the motion of the plaintiffs for relief in addition to that herein specifically granted be and each is hereby denied.

It is further ordered that jurisdiction of all matters herein involved be and the same is hereby specifically retained.

## ORDER

Pursuant to the order of this Court made and entered herein earlier on this date, the application of the defendant George C. Wallace as Governor of the State of Alabama, by and through his attorneys, filed with the Clerk of this Court as of 4:42 p. m., on March 18, 1965, and presented to the undersigned Judge of this court for consideration as of 8:40 a. m., on this date, was heard by this Court on this date commencing at 11 a. m.

Upon consideration of said application and the arguments of counsel in support of and in opposition thereto, this Court finds that there is nothing new presented and shown that will justify a stay of this Court's order made and entered in this case on March 17, 1965.

It is not alleged by the defendant Governor in the petition for stay as now presented that this Court's order of March 17, 1965, is contrary to the law; it is not alleged by the petition that the findings of fact are not supported by the evidence; no claim is made that these findings or conclusions are clearly erroneous. The only basis for the petition to stay is that if the order is not stayed there is danger of violence on the part of white citizens in opposition to the proposed march. Such a contention will not justify the stay of an otherwise uncontested court order. Cooper v. Aaron (1958), 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; Wright v. Georgia (1963), 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349; Taylor v. State of Louisiana, 370 U.S. 154, 82 S.Ct. 1188, 8 L.Ed.2d 395; Terminiello v. City of Chicago (1949), 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131, and Watson v. City of Memphis (1963), 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529.

During the hearing held in this cause that lasted for a period of four and one-half days, the defendant Governor and the other defendants had a full opportunity to offer any evidence they desired for the purpose of showing any undue burden that might be placed upon the State enforcement agencies of Alabama, or the costs that would be imposed upon the State of Alabama if this Court allowed the relief the plaintiffs sought. The defendants failed to offer any such evidence. This is true even after the defendants had a detailed copy of the plan as proposed by the plaintiffs.

This matter as now presented is not a question of the State of Alabama not having the resources and manpower to keep down disorder and violence since the United States stands ready and willing, if requested by the Governor of the State of Alabama, to assist in this regard. The only question that is now presented is whether the State of Alabama authorities are willing to employ their available resources and utilize the additional available resources of the United States Government to preserve peace and order in their compliance with this Court's order.

This Court, being desirous that the parties, particularly the Governor of the State of Alabama, have an adequate opportunity to have this denial of their petition to stay reviewed by a higher court, has determined that a panel of Judges, members of the United States Court of Appeals for the Fifth Circuit, stands ready and willing, upon proper application, to review immediately this Court's denial of the petition to stay. The defendants are hereby informed that said appellate panel stands ready either this afternoon or tomorrow, upon proper application to said Court and upon notice to opposing counsel, to hear their motion to stay.

If the defendant Governor of the State of Alabama desires to take advantage of the opportunity to present this matter immediately to the United States Court of Appeals for the Fifth Circuit in New Orleans, Louisiana, the Clerk of this Court is authorized and directed to make the court file and all exhibits available to the Honorable John Doar, attorney for the United States, who appears as amicus and as a party in this cause, so that said file and records may be transmitted directly to the United States Court of Appeals.

In consideration of the foregoing, it is the order, judgment and decree of this Court that the application of the defendant Governor of the State of Alabama, presented to this Court on this date, seeking to stay the order of this Court made and entered herein on March 17, 1965, be and the same is hereby denied.

## APPENDIX "A"

### Dallas County, Alabama

Registration Statistics
(November 1964)

| | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 14,400 | 9,542 | 66.3 |
| Negro | 15,115 | 335 | 2.2 |

### DALLAS COUNTY STATISTICS

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| 1961 | | W | N | W | N | W | N | W | N |
| June | W | 12 | | 10 | | 2 | | 16 | |
| | N | | 13 | | 2 | | 11 | | 84 |
| July | W | 13 | | 12 | | 1 | | 7.7 | |
| | N | | 4 | | 4 | | 0 | | 0 |
| August | W | 9 | | 8 | | 1 | | 11 | |
| | N | | 12 | | 7 | | 5 | | 41 |
| Sept. | W | 10 | | 9 | | 1 | | 10 | |
| | N | | 19 | | 11 | | 8 | | 42 |
| Oct. | W | 30 | | 28 | | 2 | | 7 | |
| | N | | 19 | | 14 | | 5 | | 27 |
| Nov. | W | 45 | | 43 | | 2 | | 4 | |
| | N | | 29 | | 18 | | 11 | | 38 |
| Dec. | W | 15 | | 13 | | 2 | | 13 | |
| | N | | 4 | | 3 | | 1 | | 25 |
| 1962 | | | | | | | | | |
| Jan. | W | 158 | | 144 | | 14 | | 9 | |
| | N | | 5 | | 4 | | 1 | | 20 |
| Feb. | W | 128 | | 115 | | 13 | | 10 | |
| | N | | 3 | | 2 | | 1 | | 33 |
| March | W | 33 | | 30 | | 3 | | 9 | |
| | N | | 3 | | 2 | | 1 | | 33 |
| April | W | 15 | | 13 | | 2 | | 13 | |
| | N | | 4 | | 3 | | 1 | | 25 |
| May | W | 6 | | 6 | | 0 | | 0 | |
| | N | | 2 | | 1 | | 1 | | 50.0 |
| June | W | 3 | | 3 | | 0 | | 0 | |
| | N | | 2 | | 1 | | 1 | | 50.0 |
| July | W | 9 | | 9 | | 0 | | 0 | |
| | N | | 10 | | 5 | | 5 | | 50.0 |
| August | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 2 | | 0 | | 2 | | 100.0 |
| Sept. | W | 9 | | 8 | | 1 | | 11.1 | |
| | N | | 0 | | 0 | | 0 | | 0 |
| Oct. | W | 16 | | 16 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | 0 |
| Nov. | W | 14 | | 13 | | 1 | | 7.1 | |
| | N | | 3 | | 2 | | 1 | | 33.3 |
| Dec. | W | 5 | | 3 | | 2 | | 40 | |
| | N | | 2 | | 0 | | 2 | | 100.0 |
| 1963 | | | | | | | | | |
| Jan. | W | 73 | | 59 | | 14 | | 19.2 | |
| | N | | 3 | | 1 | | 2 | | 66.7 |

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| 1963 | | W | N | W | N | W | N | W | N |
| Feb. | W | 21 | | 12 | | 9 | | 42.8 | |
| | N | | 14 | | 7 | | 7 | | 50.0 |
| March | W | 9 | | 7 | | 2 | | 22.2 | |
| | N | | 17 | | 0 | | 17 | | 100.0 |
| April | W | 5 | | 2 | | 3 | | 60.0 | |
| | N | | 17 | | 0 | | 17 | | 100.0 |
| May | W | 29 | | 16 | | 13 | | 44.8 | |
| | N | | 31 | | 1 | | 30 | | 96.8 |
| June | W | 45 | | 31 | | 14 | | 31.1 | |
| | N | | 41 | | 6 | | 35 | | 85.4 |
| July | W | 69 | | 52 | | 17 | | 24.6 | |
| | N | | 38 | | 7 | | 31 | | 81.6 |
| August | W | 33 | | 21 | | 12 | | 36.7 | |
| | N | | 64 | | 7 | | 57 | | 89.0 |
| Sept. | W | 42 | | 34 | | 8 | | 19.0 | |
| | N | | 7 | | 1 | | 6 | | 85.7 |
| Oct. | W | 296 | | 219 | | 77 | | 26.0 | |
| | N | | 215 | | 11 | | 204 | | 94.9 |
| Nov. | W | 115 | | 78 | | 37 | | 32.2 | |
| | N | | 55 | | 4 | | 51 | | 92.7 |
| Dec. | W | 46 | | 42 | | 4 | | 8.7 | |
| | N | | 20 | | 3 | | 17 | | 85.0 |
| 1964 | | | | | | | | | |
| Jan. | W | 246 | | 197 | | 49 | | 19.9 | |
| | N | | 54 | | 15 | | 39 | | 72.2 |
| Feb. | W | 22 | | 16 | | 6 | | 27.3 | |
| | N | | 27 | | 1 | | 26 | | 96.3 |
| March | W | 31 | | 26 | | 5 | | 16.1 | |
| | N | | 12 | | 2 | | 10 | | 83.3 |
| April | W | 13 | | 11 | | 2 | | 15.4 | |
| | N | | 23 | | 3 | | 20 | | 86.9 |
| May | W | 10 | | 8 | | 2 | | 20.0 | |
| | N | | 12 | | 4 | | 8 | | 66.7 |
| June | W | 7 | | 7 | | 0 | | 0 | |
| | N | | 14 | | 2 | | 12 | | 85.7 |
| July | W | 22 | | 15 | | 7 | | 31.8 | |
| | N | | 98 | | 6 | | 92 | | 93.9 |
| August | W | 25 | | 23 | | 2 | | 8.0 | |
| | N | | 12 | | 3 | | 9 | | 75.0 |
| Sept. | W | 13 | | 12 | | 1 | | 7.7 | |
| | N | | 10 | | 2 | | 8 | | 80.0 |
| Oct. | W | 23 | | 20 | | 3 | | 13.0 | |
| | N | | * | | * | | 5 | | — |
| Nov. | W | 7 | | 7 | | 0 | | 0 | |
| | N | | 7 | | 1 | | 6 | | 85.7 |
| Dec. | W | 0 | | 0 | | 0 | | 0 | |
| | N | | 14 | | 0 | | 14 | | 100 |
| 1965 | | | | | | | | | |
| Jan. | W | 52 | | 24 | | 28 | | 53.8 | |
| | N | | 112 | | 12 | | 100 | | 89.3 |
| Feb. | W | 33 | | 32 | | 1 | | 3.0 | |
| | N | | 95 | | 36 | | 59 | | 62.1 |
| | | 1,828 | 1,148 | 1,465 | 214 | 363 | 939 | | |

* Figures not obtained; the Board accepted applications on one day in October 1964.

## Perry County, Alabama

### Registration Statistics
#### (August 17, 1964)

|       | Persons of Voting Age | Persons Registered | Percent Registered |
|-------|-----------------------|--------------------|--------------------|
| White | 3441                  | 3260               | 94.7               |
| Negro | 5202                  | 365                | 7.0                |

### Applications For Registration

| Year |   | Total Applied W | Total Applied N | Accepted W | Accepted N | Rejected W | Rejected N | Percent Rejected W | Percent Rejected N |
|------|---|-----------------|-----------------|------------|------------|------------|------------|--------------------|--------------------|
| **1962** |   |   |   |   |   |   |   |   |   |
| Nov. | W | 1 |   | 1 |   | 0 |   | 0 |   |
|      | N |   | 5 |   | 1 |   | 4 |   | 80 |
| Dec. | W | 0 |   | 0 |   | 0 |   | 0 |   |
|      | N |   | 6 |   | 1 |   | 5 |   | 83.3 |
| **1963** |   |   |   |   |   |   |   |   |   |
| Jan. | W | 3 |   | 3 |   | 0 |   | 0 |   |
|      | N |   | 8 |   | 0 |   | 8 |   | 100 |
| Feb. | W | 14 |   | 13 |   | 1 |   | 7.1 |   |
|      | N |   | 2 |   | 0 |   | 2 |   | 100 |
| March | W | 7 |   | 6 |   | 1 |   | 14.2 |   |
|       | N |   | 1 |   | 0 |   | 1 |   | 100 |
| April | W | 0 |   | 0 |   | 0 |   | 0 |   |
|       | N |   | 0 |   | 0 |   | 0 |   | 0 |
| May | W | 5 |   | 5 |   | 0 |   | 0 |   |
|     | N |   | 1 |   | 0 |   | 1 |   | 100 |
| June | W | 4 |   | 4 |   | 0 |   | 0 |   |
|      | N |   | 189 |   | 42 |   | 147 |   | 77.8 |
| July | W | 4 |   | 3 |   | 1 |   | 25 |   |
|      | N |   | 37 |   | 0 |   | 37 |   | 100 |
| August | W | 9 |   | 8 |   | 1 |   | 11.1 |   |
|        | N |   | 6 |   | 0 |   | 6 |   | 100 |
| Sept. | W | 6 |   | 6 |   | 0 |   | 0 |   |
|       | N |   | 0 |   | 0 |   | 0 |   | 0 |
| Oct. | W | 21 |   | 15 |   | 6 |   | 28.5 |   |
|      | N |   | 73 |   | 15 |   | 58 |   | 79.5 |
| Nov. | W | 51 |   | 45 |   | 6 |   | 11.7 |   |
|      | N |   | 65 |   | 4 |   | 61 |   | 93.8 |
| Dec. | W | 28 |   | 24 |   | 4 |   | 42.2 |   |
|      | N |   | 20 |   | 6 |   | 14 |   | 70 |
| **1964** |   |   |   |   |   |   |   |   |   |
| Jan. | W | 48 |   | 34 |   | 14 |   | 29.2 |   |
|      | N |   | 62 |   | 8 |   | 54 |   | 88.9 |
| Feb. | W | 10 |   | 6 |   | 4 |   | 40 |   |
|      | N |   | 15 |   | 2 |   | 13 |   | 86.6 |
| March | W | 16 |   | 12 |   | 4 |   | 25 |   |
|       | N |   | 17 |   | 3 |   | 14 |   | 82.3 |
| April | W | no report |   |   |   |   |   |   |   |
|       | N | no report |   |   |   |   |   |   |   |
| May | W | 16 |   | 13 |   | 3 |   | 18.7 |   |
|     | N |   | 25 |   | 10 |   | 15 |   | 60 |
| June | W | 3 |   | 2 |   | 1 |   | 33.3 |   |
|      | N |   | 16 |   | 3 |   | 13 |   | 81.2 |

| Year | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|
| | W | N | W | N | W | N | W | N |
| 1964 to July | | | | | | | | |
| 20   W | 6 | | 6 | | 0 | | 0 | |
| N | | 24 | | 8 | | 16 | | 56.6 |
| to August | | | | | | | | |
| 17   W | 8 | | 2 | | 6 | | 75 | |
| N | | 21 | | 5 | | 16 | | 76.1 |

### Wilcox County, Alabama

#### Registration Statistics
#### December 1963

| | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 2647 | — 2959 | 100 * |
| Negro | 6085 | 0 | 0 |

#### Applications for Registration

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| 1959 | W | 47 | | 47 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | — |
| 1960 | W | 118 | | 116 | | 2 | | 1.6 | |
| | N | | 0 | | 0 | | 0 | | — |
| 1961 | W | 62 | | 62 | | 0 | | 0 | |
| | N | | 0 | | 0 | | 0 | | — |
| 1962 | W | 97 | | 89 | | 8 | | 8.2 | |
| | N | | 0 | | 0 | | 0 | | — |
| To Oct. | W | 62 | | 61 | | 1 | | 1.6 | |
| 17, 1963 | N | | 29 | | 0 | | 29 | | 100 |
| Totals | W | 386 | | 315 | | 11 * | | 2.9 | |
| | N | | 29 | | 0 | | 29 | | 100 |

\* A total of 11 rejected applications filed with the Board are by persons believed to be white, 9 of them were rejected because the applicant did not possess the residency requirements to register to vote or they were not of proper age to register. One applicant was rejected for inability to complete the application and one form was marked "disqualified due to inability to complete application," but the applicant was registered to vote on the basis of this application.

## Hale County, Alabama

### Registration Statistics
#### (December 1964)

| | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 3594 | 3395 | 94.4 |
| Negro | 5999 | 218 | 3.6 |

### Applications For Registration

| Month and Year | | Total Applied W | N | Accepted W | N | Rejected W | N | Percent Rejected W | N |
|---|---|---|---|---|---|---|---|---|---|
| **1962** | | | | | | | | | |
| Jan. | W | | | 7 | | | | | |
| | N | | | | 0 | | | | |
| Feb. | W | | | 69 | | | | | |
| | N | | | | 3 | | | | |
| March | W | | | 20 | | | | | |
| | N | | | | 2 | | | | |
| April | W | | | 19 | | | | | |
| | N | | | | 1 | | | | |
| May | W | | | 2 | | | | | |
| | N | | | | 0 | | | | |
| June | W | | | 2 | | | | | |
| | N | | | | 5 | | | | |
| July | W | | | 6 | | | | | |
| | N | | | | 1 | | | | |
| August | W | | | 2 | | | | | |
| | N | | | | 3 | | | | |
| Sept. | W | | | 10 | | | | | |
| | N | | | | 1 | | | | |
| Oct. | W | | | 6 | | | | | |
| | N | | | | 0 | | | | |
| Nov. | W | | | 3 | | | | | |
| | N | | | | 1 | | | | |
| Dec. | W | | | 2 | | | | | |
| | N | | | | 0 | | | | |
| **1963** | | | | | | | | | |
| Jan. | W | | | 1 | | | | | |
| | N | | | | 1 | | | | |
| Feb. | W | | | 7 | | | | | |
| | N | | | | 4 | | | | |
| March | W | | | 8 | | | | | |
| | N | | | | 3 | | | | |
| April | W | | | 2 | | | | | |
| | N | | | | 3 | | | | |
| May | W | | | 1 | | | | | |
| | N | | | | 2 | | | | |
| June | W | | | 5 | | | | | |
| | N | | | | 3 | | | | |
| July | W | | | 3 | | | | | |
| | N | | | | 1 | | | | |
| August | W | | | 6 | | | | | |
| | N | | | | 14 | | | | |

Between 1954 and August 1963, 134 undated applications were rejected by the Board of Registrars; of these 120 were filed by Negroes and 14 were filed by white applicants.

| Month and Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| **1963** | | W | N | W | N | W | N | W | N |
| Sept. | W | | | 2 | | | | | |
| | N | | | | 2 | | | | |
| Oct. | W | | | 44 | | | | | |
| | N | | | | 3 | Between September 1963 and February 11, 1964, 143 applications for which the race of the applicant has not been determined have been filed with the Board of Registrars. | | | |
| Nov. | W | | | 12 | | | | | |
| | N | | | | 8 | | | | |
| Dec. | W | | | 5 | | | | | |
| | N | | | | 4 | | | | |
| **1964** | | | | | | | | | |
| Jan. | W | | | 13 | | | | | |
| | N | | | | 3 | | | | |
| Feb. | W | | | 60 | | 3[1] | | | |
| | N | | | | 11 | | 13[1] | | |
| March | W | 16 | | 14 | | 2 | | 12.5 | |
| | N | | 18 | | 2 | | 16 | | 88.8 |
| April | W | 44 | | 43 | | 1 | | 2.3 | |
| | N | | 8 | | 4 | | 4 | | 50.0 |
| May | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 7 | | 2 | | 5 | | 71.4 |
| June | W | 2 | | 2 | | 0 | | 0 | |
| | N | | 3 | | 0 | | 3 | | 100 |
| July | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 29 | | 8 | | 21 | | 72.4 |
| August | W | 6 | | 6 | | 0 | | 0 | |
| | N | | 14 | | 8 | | 6 | | 42.8 |
| Sept. | W | 6 | | 5 | | 1 | | 16.7 | |
| | N | | 10 | | 3 | | 7 | | 70.0 |
| Oct. | W | 10 | | 9 | | 1 | | 10 | |
| | N | | 12 | | 3 | | 9 | | 75.0 |
| Nov. | W | 0 | | 0 | | 0 | | — | |
| | N | | 2 | | 0 | | 2 | | 100 |
| Dec. | W | 0 | | 0 | | 0 | | — | |
| | N | | 3 | | 1 | | 2[2] | | 66.7 |
| Totals | W | 106 | | 101 | | 5 | | 4.7 | |
| (Mar.– Dec. 64) | N | | 106 | | 31 | | 75 | | 70.7 |

[1] Rejected figures are for applications filed after February 11, 1964.

[2] In addition two forms filed by white persons and rejected by the Board are undated; and one form filed in February 1964 and one in March 1964 do not indicate race.

## Choctaw County, Alabama

### Registration Statistics
#### February 1, 1965

|  | Persons of Voting Age | Persons Registered | Percent Registered |
|---|---|---|---|
| White | 5192 | 4886 | 94.1 |
| Negro | 3982 | 284 | 7.1 |

### Applications for Registration

| Year | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| Nov. 9, 1959–Dec. 31, 1959 | W | 11 | | 11 | | 0 | | 0 | |
| | N | | 3 | | 1 | | 2 | | 66.6 |
| 1960 | W | 232 | | 232 | | 0 | | 0 | |
| | N | | 20 | | 1 | | 19 | | 95.0 |
| 1961 | W | 196 | | 195 | | 1 | | .5 | |
| | N | | 115 | | 17 | | 98 | | 85.2 |
| 1962 | W | 212 | | 212 | | 0 | | 0 | |
| | N | | 118 | | 23 | | 95 | | 80.5 |
| 1963 | W | 32 | | 32 | | 0 | | 0 | |
| To Feb. 5 | N | | 0 | | 0 | | 0 | | — |
| 1959–1963 Dates Unknown | W | 1 | | 0 | | 1 | | 100 | |
| | N | | 46 | | 0 | | 46 | | 100 |
| Feb. 5, 1963– April 6, 1964 | W | 393 | | 385 | | 8 | | 2.0 | |
| | N | | 98 | | 35 | | 63 | | 64.2 |
| April 20, 1964– Feb. 1, 1965 | W | 111 | | 108 | | 3 | | 2.7 | |
| | N | | 100 | | 29 | | 71 | | 71.0 |
| Totals | W | 1188 | | 1175 | | 13 | | 1.2 | |
| | N | | 500 | | 106 | | 394 | | 78.8 |

## Marengo County, Alabama

### Persons Registered To Vote

| Year | White | Negro |
|---|---|---|
| Feb. 1954<br>1955 | 392 | 98 |
| 1956 | 328 | 2 |
| 1957 | 118 | 0 |
| 1958 | 252 | 0 |
| 1959 | 457 | 1 |
| 1960 | 57 | 5 |
| 1961 | | 10 |
| Jan. and Feb. 1962 | 103<br>214 | 1 |
| Totals | 1,921 | 117 |

**Applications for Registration**

| Month and Year | | Total Applied W | Total Applied N | Accepted W | Accepted N | Rejected W | Rejected N | Percent Rejected W | Percent Rejected N |
|---|---|---|---|---|---|---|---|---|---|
| March 1962– | W | 145 | | 145 | | 0 | | 0 | |
| Dec. 1962 | N | | 66 | | 14 | | 52 | | 78.8 |
| Jan. 1963 | W | 20 | | 20 | | 0 | | 0 | |
| | N | | 70 | | 32 | | 38 | | 54.3 |
| Feb. 1963– | W | 43 | | 43 | | 0 | | 0 | |
| April 1963 | N | | 27 | | 13 | | 14 | | 51.8 |
| May 1963 | W | 3 | | 3 | | 0 | | 0 | |
| | N | | 13 | | 12 | | 1 | | 77.7 |
| June 1963 | W | 5 | | 5 | | 0 | | 0 | |
| | N | | 32 | | 24 | | 8 | | 25.0 |
| July 1963 | W | 23 | | 23 | | 0 | | 0 | |
| | N | | 99 | | 19 | | 70 | | 70.1 |
| August 1963 | W | 4 | | 4 | | 0 | | 0 | |
| | N | | 48 | | 43 | | 5 | | 10.4 |
| Sept. 1963 | W | 21 | | 21 | | 0 | | 0 | |
| | N | | 16 | | 13 | | 3 | | 18.7 |
| Oct. 1963 | W | 118 | | 118 | | 0 | | 0 | |
| | N | | 31 | | 13 | | 18 | | 58.1 |
| Nov. 1963 | W | 64 | | 63 | | 1 | | 1.6 | |
| | N | | 20 | | 6 | | 14 | | 70.0 |
| Dec. 1963 | W | 10 | | 10 | | 0 | | 0 | |
| | N | | 3 | | ·3 | | 0 | | 0 |
| Jan. 1964 | W | 96 | | 95 | | 1 | | 1.0 | |
| | N | | 20 | | 19 | | 1 | | 5.0 |
| Feb. 1964 | W | 64 | | 64 | | 0 | | 0 | |
| | N | | 9 | | 2 | | 7 | | 77.7 |
| March 1964 | W | 22 | | 21 | | 1 | | 4.5 | |
| | N | | 1 | | 1 | | 0 | | 0 |
| April 1964 | W | 37 | | 36 | | 1 | | 2.6 | |
| | N | | 8 | | 2 | | 6 | | 75.0 |
| May 1964 | W | 0 | | 0 | | 0 | | — | |
| | N | | 0 | | 0 | | 0 | | — |
| June 1964 | W | 10 | | 10 | | 0 | | 0 | |
| | N | | 7 | | 3 | | 4 | | 59.1 |
| July 1964 | W | 12 | | 12 | | 0 | | 0 | |
| | N | | 111 | | 65 | | 46 | | 45.5 |
| August 1964 | W | 14 | | 14 | | 0 | | 0 | |
| | N | | 28 | | 19 | | 9 | | 32.1 |
| Sept. 1964 | W | 36 | | 29 | | 7 | | 19.5 | |
| | N | | 10 | | 0 | | 10 | | 100 |
| Oct. 1964 | W | 64 | | 49 | | 15 | | 23.4 | |
| | N | | 5 | | 0 | | 5 | | 100 |
| Nov. 1964 | W | 0 | | 0 | | 0 | | — | |
| | N | | 0 | | 0 | | 0 | | — |
| Dec. 1964 | W | 2 | | 2 | | 0 | | 0 | |
| | N | | 1 | | 1 | | 0 | | 0 |
| Jan. 1965 | W | 1 | | 1 | | 0 | | 0 | |
| | N | | 4 | | 0 | | 4 | | 100 |
| Feb. 1965 | W | 16 | | 11 | | 5 | | 31.3 | |
| | N | | 3 | | 0 | | 3 | | 100 |
| Totals | W | 830 | | 799 | | 31 | | 3.7 | |
| | N | | 622 | | 304 | | 318 | | 51.1 |

## APPENDIX "B"

### PLAINTIFFS' PROPOSED PLAN FOR MARCH FROM SELMA, ALABAMA, TO MONTGOMERY, ALABAMA

1. The march will commence on Friday, March 19, 1965 at 10:30 a. m. or any day thereafter provided that plaintiffs will provide at least 48 hours advance notice of the march to Defendants, the United States, and the Court.

2. The number of persons marching will be as follows:

A. There will be no limitation on the number of marchers within the Cities of Selma and Montgomery and along the 4-lane portions of Route 80-East between Selma and Montgomery.

B. The number of marchers will not exceed 300 persons on the 2-lane portion of Route 80.

3. The following are the approximate distances to be covered each day:

A. First day-march approximately 11 miles stopping at a designated private field with permission of owner which has already been granted;

B. Second day-march approximately 11 miles stopping at a designated field with permission of the owner which already has been granted;

C. Third day-march approximately 17 miles stopping at a designated building and adjoining field with permission of owners which has already been granted;

D. Fourth day-march 8 miles to the western part of Montgomery stopping at an area tentatively selected and to be designated.

E. Fifth day-march from western part of Montgomery to the Capitol.

F. Large tents will be erected at the campsites by professionals. Meetings and song festivals may be held at campsites.

4. Route of march in the City of Selma: Starting at Brown's Chapel A.M.E. Church on Sylvan Street proceeding South on Sylvan to Alabama, then West on Alabama to Broad (Highway 80-East), then South on Broad Street across Edmund Pettus Bridge along Highway 80-East to Montgomery. The march in the City will be conducted in the streets.

5. Route in the City of Montgomery: Marchers will enter the City following Route 80 until it becomes Fairview Avenue and continue on Fairview to Oak Street turning North on Oak Street to Jeff Davis Avenue; then East on Jeff Davis to Holt Street; then North on Holt to Mobile Street; then on Mobile to Montgomery; then Northeast on Montgomery to Court Square then up Dexter Avenue to Capitol. The March in the City will be in the streets.

6. On the highway, the marchers will proceed on shoulders of the road walking on the left side facing automobile traffic. They will march along road shoulders two abreast and employ single files at places where the shoulder is narrow and on bridges without sidewalks. The marchers will be organized in separate groups of approximately 50 persons (or less) and each group will be under the supervision of a designated group leader.

7. The following supporting services will be provided:

A. Food.

B. Truck-borne washing and toilet facilities.

C. Litter and garbage pickup by truck along route and at campsites.

D. Ambulance and first aid service.

E. Transportation for return to Selma of those marchers in excess of the 300 (or fewer) persons who will continue on the march after the first day. Transportation will also be available for some persons who will join the group on the last day to complete march by entry into Montgomery.

F. Lines of communication among the marchers and leaders and certain supporting services will be established by walkie-talkie radios and other means.

8. Liaison will be established between designated leaders of the march and such

state and local officials as the agencies concerned shall designate.

9. A mass meeting will be held in front of the Alabama State Capitol on the day the marchers enter Montgomery. There will be a speakers' stand with loud speakers in the street in front of the Capitol. The audience will be on the sidewalks and in the street in front of the Capitol as well as on the Capitol steps. The audience will be directed not to walk on the grass around the Capitol unless the state permits this. The formal program will be conducted between approximately 12 noon and 3:00 p. m.

10. Following completion of the outdoor program:

A. Not more than 20 persons will enter the Capitol Building, proceed to the Governor's office, seek an audience with the Governor and present a petition.

B. Transportation away from the Capitol grounds will be provided by leaders of the march to various destinations including transportation terminals.

11. The march will be orderly and peaceful and otherwise observe the highest standards of dignity and decorum.

Respectfully submitted,

/s/Hosea L. Williams   /s/Peter A. Hall
        PETER A. HALL
          1630 4th Avenue N.
/s/John Lewis Birmingham, Alabama

  Plaintiffs  Gray & Seay
          34 North Perry Street
          Montgomery, Alabama

    Jack Greenberg
    Norman Amaker
    Charles H. Jones, Jr.
    James M. Nabrit, III
        10 Columbus Circle
        New York 19, N. Y.
  Attorneys for plaintiff