TAYLOR ET AL. *v.* LOUISIANA.

No. 773.   Decided June 4, 1962.

*Carl Rachlin* and *Judith P. Vladeck* for petitioners.

*Jack P. F. Gremillion,* Attorney General of Louisiana, and *M. E. Culligan,* Assistant Attorney General, for respondent.

PER CURIAM.

Petitioners, six Negroes, were convicted of violating Louisiana's breach-of-the-peace statute, La. Rev. Stat., 1950, § 14:103.1,[1] and were given fines and jail terms by

---

[1] In relevant part, § 14:103.1 provides: "A. Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby: (1) crowds or congregates with others . . . in or upon . . . any . . . public place or

the state court. The Louisiana Supreme Court declined to review their convictions, and the case is here on petition for a writ of certiorari which we have granted.

Four of the six petitioners went into the waiting room customarily reserved for white people at the Trailways Bus Depot in Shreveport, Louisiana, in order to take a bus to Jackson, Mississippi. The Chief of Police of Shreveport approached the four and asked them why they were in the station. They told him they were interstate passengers and wished to purchase tickets and obtain travel information. The Chief told them they could do this in the colored waiting room and ordered them to move on. When the four refused to leave, stating again that they were interstate passengers and asserting their rights under federal law, they were ordered to leave or be arrested. The spokesman of the group then said, "We have no choice; go ahead and arrest us." The police thereupon arrested the four of them. The other two petitioners were then arrested, while sitting nearby in the automobile which had brought the six to the bus station.

At the trial there was testimony that immediately upon petitioners' entry into the waiting room many of the people therein became restless and that some onlookers climbed onto seats to get a better view. Nevertheless, respondent admits these persons moved on when ordered to do so by the police. There was no evidence of violence. The record shows that the petitioners were quiet, orderly, and polite. The trial court said, however, that the mere presence of Negroes in a white waiting room was likely to give rise to a breach of the peace. It held the mere presence of the Negroes in the waiting room, as part

building . . . and who fails or refuses to disperse and move on, or disperse or move on, when ordered so to do by any law enforcement officer of any municipality . . . in which such act or acts are committed, or by any law enforcement officer of the state of Louisiana . . . shall be guilty of disturbing the peace."

of a preconceived plan, was sufficient evidence of guilt. It accordingly held that the four had violated the state breach-of-the-peace statute and that the other two had counseled and procured the others to commit the crime.

Here, as in *Garner* v. *Louisiana,* 368 U. S. 157, the only evidence to support the charge was that petitioners were violating a custom that segregated people in waiting rooms according to their race, a practice not allowed in interstate transportation facilities by reason of federal law.[2] *Boynton* v. *Virginia,* 364 U. S. 454, 459–460. And see *Mayor & City Council of Baltimore* v. *Dawson,* 350 U. S. 877 (public beaches); *Holmes* v. *City of Atlanta,* 350 U. S. 879 (municipal golf courses); *Gayle* v. *Browder,* 352 U. S. 903 (bus); *New Orleans Park Assn.* v. *Detiege,* 358 U. S. 54 (municipal golf course and park). The judgments of conviction must therefore be

*Reversed.*

MR. JUSTICE HARLAN would grant certiorari and set the case for argument.

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.

---

[2] "That there exists a serious and difficult problem arising from a feeling of race hostility which the law is powerless to control, and to which it must give a measure of consideration, may be freely admitted. But its solution cannot be promoted by depriving citizens of their constitutional rights and privileges." *Buchanan* v. *Warley,* 245 U. S. 60, 80–81.