THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VALERIE A. WITZKOWSKI, Defendant-Appellant.

Fourth District   No. 12727

Opinion filed December 2, 1976.

CRAVEN, J., dissenting.

Lawrence Silver, of Los Angeles, California, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert G. Frederick, Assistant State's Attorney, and G. Michael Prall and Stephen Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals a conviction by jury verdict of a violation of section 21.2—2(c) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 21.2—2(c)). A fine of $25 was imposed.

The offense charged is stated in a statute having six sections or parts, sections 21.2—1 through 21.2—6. Part 1 includes a declaration of the legislative purpose, part 2 defines the conduct constituting the offense, part 3 provides that the statute shall not prevent lawful assembly or orderly petition for redress of aggrievances, part 4 provides penalties and part 5 states certain definitions.

The conduct proscribed by statute is stated:

"A person commits interference with a public institution of higher education when, on the campus of a public institution of

higher education, or at or in any building or other facility owned, operated or controlled by the institution, without authority from the institution he, through force or violence, actual or threatened:

(a) willfully denies to a trustee, employee, student or invitee of the institution:

(1) Freedom of movement at such place; or

(2) Use of the property or facilities of the institution; or

(3) The right of ingress or egress to the property or facilities of the institution; or

(b) willfully impedes, obstructs, interferes with or disrupts:

(1) the performance of institutional duties by a trustee or employee of the institution; or

(2) the pursuit of educational activities, as determined or prescribed by the institution, by a trustee, employee, student or invitee of the institution; or

(c) knowingly occupies or remains in or at any building, property or other facility owned, operated or controlled by the institution after due notice to depart."

The trial court initially dismissed the information upon a finding that the statute, in its several parts, was facially unconstitutional as violating the First and Fourteenth Amendments to the Constitution of the United States. In *People v. Witzkowski* (1972), 53 Ill. 2d 216, 290 N.E.2d 236, the Supreme Court reversed the finding of the trial court. The United States Supreme Court dismissed defendant's appeal for want of a final judgment. Defendant's complaint in the United States District Court to enjoin the enforcement of the Act was dismissed.

The opinion in *Witzkowski* determined that the statute was not unconstitutionally vague or overbroad as to the language upon which issues of constitutionality were raised, *i.e.*, "without authority from the institution" (par. 21.2—2); "force or violence * * * otherwise to interfere with the conduct of the authorized activities" (par. 21.2—5); "due notice" (pars. 21.2—2(c), 21.2—5), and "authorized representative" (par. 21.2—5). See also *People v. Barnett* (1972), 7 Ill. App. 3d 185, 287 N.E.2d 247.

On the afternoon of May 6, 1971, defendant, as a part of a group of some 100 students at the University conducted an "antiwar demonstration" in the Union building. The Undergraduate Students Association had been authorized to hold a demonstration in the south lounge of the afternoon from 12 to 5 p.m. on that date. Room 129 in the Union building had been reserved by recruiting officers of the Marine Corp on that date. This office was entered from a lobby which contained elevators and was a passageway to parts of the building, including library and eating facilities. The defendant, with the other students participating in the demonstration, moved from the south lounge reserved to them to

the lobby area in front of Room 129 and seated themselves on the floor. The director of campus security identified himself and informed the students that they were obstructing traffic, creating a safety hazard and violating university regulations and the statutes of the State. Repeated announcements of such information were made. The members of the group did not depart but continued to occupy the corridor. Certain speeches were made and a stink bomb discharged in the office occupied by the Marine recruiters. Beginning at about 2:45 p.m., the security director used a megaphone to advise the individuals to vacate the area or be subject to arrest. The warnings were repeated and the arrests were ordered. The arresting officers advised the demonstrating students individually that if they would stand up and leave they would not be arrested and only those who refused to depart were arrested.

Photographs in evidence disclose a compact group of individuals sitting in the corridors from wall to wall and occupying a substantial length of the lobby area. Defendant produced testimony that one could possibly pick his or her way through the group, but it is apparent that there was a denial of normal, ready access to persons using the building, although there is testimony that there was no actual, forcible restraint directed against any individual seeking to use the corridor.

Upon this appeal defendant argues that the statute, as employed in her conviction, is an unconstitutional denial of First Amendment rights. It is contended that the record does not show that she was guilty of any *active* force and violence, that she did not damage any property or injure any person or did not actually stop any one from proceeding through the corridor, but rather that the sit-in protest was a constitutionally protected peaceful demonstration.

The statute is to be read as a whole. (*Garner v. Louisiana* (1961), 368 U.S. 157, 167, 7 L. Ed. 2d 207, 216, 82 S. Ct. 248; *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294.) The statute reflects substantial evidence that it was drawn with conscientious attention to the constitutional rights of free speech which are protected by law. The legislative purpose is declared to be specifically limited to unlaw ful disorders at public institutions of higher education "which are disruptive of the educational process, dangerous to the health and safety of persons, damaging to public and private property, and which divert the use of institutional facilities from the primary function of education. * * * "

The conduct actually proscribed is stated in definitive terms in the second portion of the statute as one who, without authority, wilfully denies freedom of movement of others or use of the institutional facilities, interferes with the rights of others to ingress or egress, or wilfully impedes, obstructs or disrupts the performance of institutional duties,

educational activities or who knowingly occupies or remains in the facility after due notice to depart. In part 5 of the statute "due notice" is defined as oral or written notice from an authorized representative of the institution given orally or in writing "in a manner reasonably designated [*sic*] to inform him, or the group of which he is a part, that he or they should cease such action or depart from such premises." Construing the statute as a whole, it is apparent that "such action" are the acts actually proscribed in part 2. Defendant's argument that one might be charged with the offense without having actual knowledge of "due process" given to "the group of which he is a part" is not persuasive in the light of the statutory requirement that he be a part of the group notified that the notice must be reasonably designed to inform him and that there be a knowing failure to comply with the notice given.

There is also definition of "force or violence" as individual or concerted action "to impede access to or movement within or otherwise to interfere with the conduct of the authorized activities of a public institution of higher education * * *."

■■ When so considered in its entirety it is apparent that the statute proscribes only conduct which wilfully impedes the free movement of other persons, or interferes with or disrupts its normal activities. There is legislative direction that the statute shall not be used to restrict purely free speech or assembly.

The offense charged that defendant "did knowingly remain within * * * after having been given due notice to depart by a University of Illinois Officer * * *," is clearly dependent upon the presence of the condition of the interference by a person or persons with the movements of persons or the normal activities of the institution.

In *Cameron v. Johnson* (1968), 390 U.S. 611, 20 L. Ed. 2d 182, 88 S. Ct. 1335, the court upheld the constitutionality of a Mississippi antipicketing statute which prohibited the obstruction of, or unreasonable interference with free ingress or egress to and from described public buildings, saying, "[T]he statute clearly and precisely delineates its reach in words of common understanding." 390 U.S. 611, 616, 20 L. Ed. 2d 182, 187, 88 S. Ct. 1335.

Here, as in *Grayned v. City of Rockford* (1972), 408 U.S. 104, 114, 3 L. Ed. 2d 222, 231, 92 S. Ct. 2294, enforcement of the statute requires some administrative judgment, "but, as confined, that degree of judgment is permissible." The statute requires an interference with the normal activities of the institution. It does not permit suppression of an unpopular point of view and contains no invitation to subjective or discriminatory enforcement.

"[It] is the type of narrow discretion which this Court has recognized as the proper role of responsible officials in making

determinations concerning the time, place, duration, and manner of demonstrations. [Citations.] It is not the type of unbridled discretion which would allow an official to pick and choose among expressions of view the ones he will permit to use the streets and other public facilities * * *." *Cox v. Louisiana* (1965), 379 U.S. 536, 569, 13 L. Ed. 2d 471, 495, 85 S. Ct. 453.

The defendant argues that a "sit-in" protest or demonstration is a protected constitutional right, citing *Brown v. Louisiana* (1966), 383 U.S. 131, 15 L. Ed. 2d 637, 86 S. Ct. 719; *Taylor v. Louisiana* (1962), 370 U.S. 154, 8 L. Ed. 2d 395, 82 S. Ct. 1188, and *Garner v. Louisiana* (1961), 368 U.S. 157, 7 L. Ed. 2d 207, 82 S. Ct. 248. *Brown* was focused on segregation practices, but the opinion emphasizes that the persons remaining in the public library reading room violated no regulation of the library and caused neither disturbance to its use by others nor disruption of the normal business of the place. In *Taylor,* the court simply held that as to interstate travel segregated waiting rooms were not permitted by Federal law. In *Garner,* the court found that there was no evidence of any violation of the statute as construed by the State supreme court. Defendant also cites *Wolin v. Port of New York Authority* (2d Cir. 1968), 392 F.2d 83, but that opinion notes that defendants had the stated purpose not to obstruct traffic or persons in a public terminal.

We find that cases in the United States Supreme Court directly contradict the contention that one may engage in conduct which interferes with other persons upon a claim of free speech. In *Greer v. Spock* (1976), 424 U.S. 828, 47 L. Ed. 2d 505, 96 S. Ct. 1211:

> "The guarantees of the First Amendment have never meant 'that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.' *Adderley v. Florida,* 385 U.S. 39, 48, 17 L. Ed. 2d 149, 87 S. Ct. 242. 'The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.' [Citations.]" 424 U.S. 828, 836, 47 L. Ed. 2d 505, 513, 96 S. Ct. 1211, 1216-17.

In *United States v. O'Brien* (1968), 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673, the defendant contended that the public burning of his draft card was "symbolic speech" protected by the First Amendment. The court said:

> "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. * * * This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can

justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. * * *" (Footnotes omitted.) 391 U.S. 367, 376-77, 20 L. Ed. 2d 672, 679, 680, 88 S. Ct. 1673.

In *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, an ordinance prohibiting noisy or diversionary activity within 150 feet of a school while in session was held to be constitutional as against contentions that the ordinance interfered with the constitutionally protected right to protest and to picket on the sidewalk. The court responded that no student, teacher or other person has an absolute constitutional right to use parts of a school building for unlimited expressive purposes and that substantial disorder or the invasion of the rights of others may be prohibited. The opinion stated:

"The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." 408 U.S. 104, 116, 33 L. Ed. 2d 222, 232, 92 S. Ct. 2294.

In support of her contention, defendant cites and quotes from *Lewis v. City of New Orleans* (1974), 415 U.S. 130, 39 L. Ed. 2d 214, 94 S. Ct. 970; *Gooding v. Wilson* (1972), 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103, and *Cohen v. California* (1971), 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780. Each of the cases deals with "pure speech", *i.e.*, speech with no accompanying conduct or action. In *Tinker v. Des Moines Independent Community School District* (1969), 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733, the conduct was the wearing of armbands which were characterized as "akin to free speech" and the court noted that there was no claim of actual or potential disruptive conduct. We can find nothing in *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686; *Shuttlesworth v. City of Birmingham* (1965), 382 U.S. 87, 15 L. Ed. 2d 176, 86 S. Ct. 211, or *Cox v. Louisiana* (1965), 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453, which suggest that purported communication by conduct has the same freedom of communication as speech alone. In *Cox* such contention was expressly rejected.

■■ Examination of the record supports the conclusion that the

conduct of the Union officials was within the spirit and the purport of the statute, and that the institutional action was not directed to interference with constitutional free speech. The record shows that a group of students had been granted their request to conduct a protest meeting, both in a lounge within the Union building from 12 to 5 p.m. and with a microphone upon an outdoor terrace from noon to 1 p.m., but that shortly after noon they moved in numbers over 100 to obstruct the corridor and the room assigned to others in particular. The elements of wilful and knowing conduct are clearly shown. The warnings of the violation of both the statute and the institutional regulations were repeated over a period of more than two hours.

Defendant urges that the court erred in admitting into evidence the events and conduct occurring prior to the giving of the last notice which was followed by the arrests. The charge was framed in the statutory provision of remaining after due notice to depart. Such evidence is proper to establish the fact of conduct proscribed by statute which is a condition for the giving of notice to depart. It is the interference and obstruction which may properly be regulated and conduct serves as the basis for the notice provided by statute.

Defendant argues that the trial court erred in refusing to give certain instructions which are said to be necessary to defendant's theory of the case. Some five of the instructions purport to be sentences or excerpts from language concerning freedom of speech to be found in various opinions of the United States Supreme Court. They are in the form of abstract legal propositions undertaking to state categorical rights and are not the law under the decisions in *Greer v. Spock* (1976), 424 U.S. 828, 47 L. Ed. 2d 505, 96 S. Ct. 1211; *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, and *United States v. O'Brien* (1968), 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673. Instructions which incorrectly state the law should not be given. *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361.

The court refused two instructions which would have required defendant's conduct to be "knowing and intentional." A specific intent is not an element of the offense charged and the mental state provided is that of knowing refusal. Section 4—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 4—5) provides:

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining

the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

The defendant tendered two instructions which would modify the statutory definition of "force and violence" by adding the phrase "in its common and ordinary meaning." We find that the jury was instructed correctly upon the issue in the language of the statute.

■■ .We conclude that the statute is constitutionally designed to further a substantial governmental interest, that the governmental interest is unrelated to the suppression of free expression and the incidental restriction on First Amendment freedom is no greater than is essential to the furtherance of that governmental interest. *United States v. O'Brien* (1968), 391 U.S. 367, 377, 20 L. Ed. 2d 672, 679, 88 S. Ct. 1673.

The judgment is affirmed.

Affirmed.

SIMKINS, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

Under the compulsion of the supreme court decision in *People v. Witzkowski* (1972), 53 Ill. 2d 216, 290 N.E.2d 236, we must hold that the statute under consideration is not facially unconstitutional.

We are not precluded, however, from an in-depth inquiry into the issue of the application of the statute and the sufficiency of the evidence in this record to establish that the defendant violated the statute. This statute, like all penal statutes, must be strictly construed. A violation of the statute can be found only when it is· established that the defendant without authority from the institution, through force or violence, actual or threatened, knowingly occupies or remains in any building after due notice to depart. All that is established by this record is that the defendant was given notice to depart and almost instantaneously thereafter was arrested. There is no evidence whatsoever to establish any semblance of force or violence. All the record establishes is that she was there. I would reverse.